**KIRKWOOD & MORGAN, INC., Appellant,**

v.

**J. O. ROACH, d/b/a Roach Rig Building and Construction Company, Appellee.**

No. 13974.

Court of Civil Appeals of Texas. San Antonio.

July 11, 1962.

Rehearing Denied Sept. 12, 1962.

Morrison, Dittmar, Dahlgren & Kaine, San Antonio, for appellant.

Whitlow, Cole & Seerden, Victoria, for appellee.

BARROW, Justice.

This is an appeal from a judgment rendered on a jury verdict in an action brought by appellee, J. O. Roach, d/b/a Roach Rig Building and Construction Company, against appellant, Kirkwood & Morgan, Inc., for breach of an alleged oral contract to construct a roadway referred to as a "T-head" for use in connection with an oil-well drill-site location. Appellee recovered judgment for 1696 cubic yards of sand at $1.00 each and $565.00 attorney's fees.

Appellant secured a short-term lease on the property in question, which was in a partly flooded coastal area of Calhoun County. It was necessary to build a roadbed and turn-around on the drilling site in this low area, and appellee, Roach, who was in the construction business, solicited this job from Kirkwood, president of appellant. Mr. Kirkwood advised Roach that his general superintendent, J. J. Craig, would subsequently contact Roach and give him an opportunity to make a deal on the job. There is no dispute that Craig and Roach met with Sparks, who was to do the hauling. They met at the area of the proposed drilling site. There is no contention that Craig was not fully authorized to make a contract for the work, but ap-

pellant contends that there was no valid contract made at this time.

The jury found substantially as follows: (1) that on or about October 6, 1958, appellee and appellant contracted for the construction of a "T-head"; (2) that appellee was to begin construction as soon as tidal conditions permitted; (3) that said road would be large enough, in the judgment of appellee, to accommodate usual traffic incidental to drilling an oil well; (4) that said parties would agree on size of the turn-around after the road was started; (5) that the 1696 cubic yards of sand were placed in accordance with the provisions of the contract; (6) that there was no agreement that appellee was to contact Craig on the exact location before the contract was to be effective; (7) that an ordinary prudent person would not have contacted Craig or appellant before beginning work; and (8) that a reasonable attorney's fee would be $565.00.

Appellant presents sixteen points, several of which relate to the sufficiency of the contract. A brief résumé of the evidence is necessary. The contract, if any, was made orally by Craig and Roach in the presence of Sparks on their October 6, 1958, visit to the area of the proposed well site. A surveyor's stake had been placed by appellant about 900 feet out in the water and both Roach and Sparks testified that Craig advised that the well site was to be in that immediate vicinity. They testified that Craig stated, if the site was moved, it would be moved that day, and would not be moved over 100 feet. They further testified that appellant was in a hurry to get started and Craig directed Roach to start as soon as the tide permitted. They testified that appellee was to build a roadway large enough, in his judgment, to accommodate drilling trucks, and that he was to be paid at the rate of $1.00 per cubic yard for all sand necessary for the roadway. The actual size of the turn-around on the rig site was to be determined by appellant after the job was started. They testified that they were familiar with the construction of a T-head, and it was usually constructed without plans or specifications. In fact, Sparks subsequently built one for appellant in this area on similar information as given by Craig on this date. Craig, who was no longer associated with appellant, was called as a witness by appellee and confirmed most of the above testimony. He disputed the testimony of Roach and Sparks on whether or not the final location had been selected. He testified that Roach was instructed to call him when he was able to begin work to confirm the exact location. Roach testified and Craig confirmed that Roach had tried to call Craig when he started work and left his number at Craig's house. After working two days, and spreading 1696 cubic yards of sand, he contacted appellant's home office and was advised to stop work as the well site had been relocated.

■ Appellant contends that there was no meeting of the minds, no mutuality of obligation, and no unconditional acceptance by Craig on behalf of appellant. To be enforceable, a contract must be reasonably definite and certain. It must leave no reasonable doubt as to what the parties intended. 13 Tex.Jur.2d, 699. Here both parties were well acquainted with this type of construction work and knew what was called for in the construction of a "T-head". They knew the approximate dimensions, but the actual number of yards of sand necessary would not be known until the contract was completed. It was for this reason that a price per yard was agreed upon. The only item that Craig testified was not determined was the definite location, and the jury found with the appellee on this disputed fact issue. Craig's testimony was that all other matters necessary to make a definite contract were agreed upon at their meeting.

In Gibson v. Texas Co., Tex.Civ.App., 239 S.W. 671, an oral agreement was upheld whereby the parties agreed that the depth of the well should be left to the reasonable judgment of the contractor. Nothing was left to the future negotiation of the parties,

as in Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472, cited by appellant.

Here all was agreed upon and understood, except the exact size of the turn-around, which would necessarily be the last thing constructed, and if a larger one was needed it would require only the dumping of more sand, at a cost of $1.00 per cubic yard. All parties were experienced with this type of work and knew what was expected of each party to the contract. Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744. The rule as to certainty is less strictly applied in a suit for damages for a breach of contract than in a suit for specific performance. Grimsley v. Life Ins. Co. of Virginia, Tex.Civ.App., 154 S.W.2d 196; 14 Tex.Jur.2d 251, § 99. We hold that there was sufficient meeting of the minds.

Appellant also contends that there was no mutuality of obligation which is essential to a bilateral contract. We have applied the rules set forth in Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340, and find that each of the parties had mutual obligations. Roach, through Sparks, was to haul the necessary sand, smooth and level it, as was reasonably necessary to construct the "T-head". Appellant was to pay him $1.00 per cubic yard for the sand reasonably necessary to be spread on this job.

Appellant further asserts that there was no unconditional acceptance of this contract. This was a disputed fact issue resolved in favor of appellee. Craig testified that all was agreed, but Roach was to call him before starting work, to see if the location had been changed. Both Roach and Sparks testified that Craig instructed Roach to begin work as soon as the tidal conditions permitted. We overrule appellant's points asserting a lack of certainty of the contract and insufficiency of the evidence to support the findings of the jury.

By its second point appellant urges that there is a fatal variance in the pleading and proof, in that appellee alleged the site of the proposed well (a surveyor's stake) was pointed out to him by Craig in a second meeting, whereas the testimony showed it was done at his only meeting with Craig.

In his work on procedure, in Vol. 2, § 519, McDonald discusses the effect of variance. It is seen from an observation of the cases since 1941, that under the Texas Rules of Civil Procedure the significance of a variance has been minimized. A variance as to a particular matter, such as time, place and quantity, must be called to the trial court's attention by an objection or motion to strike, or it will be waived. Alta Vista Creamery Co. v. Jackson, Tex.Civ. App., 210 S.W.2d 876. Here appellant did not object, move to strike, or plead surprise by the variance, and therefore waived said point. It furthermore appears that the proposition of fact was proved substantially in accordance with the legal effect of the allegation, and there was no fatal variance.

Appellant presents three points relating to the measure of damages whereby appellee was awarded $1.00 per cubic yard for the 1696 yards delivered prior to appellant's stopping the work. This was the agreed price, and it is a proper measure of damages. The contract was not completed at the express direction of appellant, so it can not now complain that appellee's failure to complete the roadway was a breach of the contract. The appellant asserts that appellee was under a duty to mitigate his damage by telephoning appellant after the first day's work. The undisputed evidence is that appellee tried to contact the appellant's superintendent, with whom he had all negotiations, and there is no finding by the jury that this attempt was not sufficient.

The measure of damages in this type of case is fully set forth in Tower Contracting Co. v. Flores, Tex.Civ.App., 294 S.W.2d 266, affirmed as to the point in question in 157 Tex. 297, 302 S.W.2d 396. It is there held that *one* measure of damages would be the contract value of the work actually done, plus any profit the contractor would

have made had he been permitted the performance of his contract. Under the facts of this case, appellant cannot complain of the trial court's awarding damages at the agreed contract price for the sand actually delivered and spread before appellant stopped the work.

■ We overrule appellant's point wherein it asserts the doctrine of judicial estoppel by reason of a previous sworn pleading by appellee asserting two meetings with Craig. Under discussion of appellant's second point, we have held that there was no fatal variance. Furthermore, the rule is that when a pleading has been abandoned, superseded or amended, it ceases to be a "judicial" admission. It remains a statement seriously made, and it can be introduced in evidence as an admission. Kirk v. Head, 137 Tex. 44, 152 S.W.2d 726, 729.

■ Appellant complains of the refusal of the court to submit three special requested issues. It is seen they are shades of the same defensive issues submitted by the court in Special Issues Nos. 6, 7 and 8. There are no objections presented to the form of the submitted issues and the trial court did not err in refusing to submit different shades of the same disputed facts. Texas & Pac. Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280.

■ Appellant's last point relates to the award of attorney's fees in this case. We sustain this point. Appellee went to the jury on his claim for damages for breach of contract, and Art. 2226, Vernon's Tex. Civ.Stats., does not apply. He abandoned that part of his cause of action which related to a sworn account and recovery on quantum meruit. Art. 2226 is penal in nature, is in derogation of the common law, and should be strictly construed. Davenport v. Harry Payne Motors, Inc., Tex.Civ. App., 256 S.W.2d 245; U. S. Life Insurance Co. v. Hamilton, Tex.Civ.App., 238 S.W.2d 289.

It is true that appellee performed some labor in dumping and spreading the sand which was furnished by appellant. However, this suit was for damages for breach of contract and not for labor done. Hicks v. Smith, Tex.Civ.App., 330 S.W.2d 641. The award for attorney's fees was not proper in this case. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75.

The judgment of the trial court will, therefore, be reformed and judgment rendered in favor of appellee for the sum of $1,696.00. Costs of this appeal are taxed three-fourths against appellant and one-fourth against appellee.