**SKI RIVER DEVELOPMENT, INC., Stephen R. Davis and Karen Davis, Appellants,**

v.

**Anthony L. McCALLA, Cheryl A. McCalla, and Walter Baker, Appellees.**

No. 10–03–00316–CV.

Court of Appeals of Texas, Waco.

April 20, 2005.

Rehearing Overruled June 7, 2005.

---

David P. Lein, George & Donaldson, L.L.P., Austin, Christopher C. Cooke, The Cooke Law Firm, Cleburne, for appellants.

Peter J. Harry, Brown McCarroll, L.L.P., Charles R. Nichols, John H. Carney & Associates, Dallas, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This case concerns a 380–acre piece of property along the Brazos River in John-

son County. Appellees Anthony L. McCalla ("McCalla") and Cheryl A. McCalla are lessees of Appellee Walter Baker ("Baker") under a 1992 lease, known as the "Glazier lease." Appellants, Ski River Development, Inc. ("Ski River"), Stephen R. Davis ("Davis"), and Karen Davis, are also lessees of Appellee Walter Baker under a 1996 lease, called the "Baker–Davis lease." In 1996, the McCallas sued the Davises, Ski River,[1] and Baker claiming they had a right to purchase the property under the Glazier lease. The McCallas sought specific performance of their exercised option, tortious interference damages (including exemplary), a declaratory judgment that: (1) Mary Baker elected to sell the property; (2) the McCalla's offer to purchase was sufficient to exercise an option; (3) the Baker–Davis lease is void because it violated the McCalla's option contract, and for attorney's fees under the Declaratory Judgment Act.[2] Baker cross-claimed against Ski River and the Davises for damages (including exemplary) for tortious interference with use and enjoyment of his land and prospective contractual relations with the McCallas, civil conspiracy, a declaratory judgment that the Baker–Davis lease is void because it was procured by fraud, undue influence, and unconscionability, and for attorney's fees under the De-

claratory Judgment Act.[3] Ski River and the Davises counterclaimed for a declaratory judgment that the McCalla's option is void and unenforceable and for attorney's fees under the Declaratory Judgment Act.[4] A jury awarded damages and attorney's fees to the McCallas and Baker against the Davises and Ski River and made other findings. The court entered judgment on the jury's verdict for tortious interference and declared that (1) the McCallas properly exercised their option to purchase and (2) the Baker–Davis lease and its amendments are void and unenforceable. Ski River and the Davises appeal in twelve issues.

We will reverse that part of the judgment that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment that the McCallas properly exercised their option to purchase the Property. We will render judgment that the McCalla's option to purchase is void. We will further reform the declaratory judgment to provide that the Baker–Davis lease is unconscionable and unenforceable, not void. We will reverse the tortious interference damages, exemplary damages, and all attorney's fees awarded to the McCallas against the Davises and Ski River. We will affirm the

1. Appellant Stephen R. Davis is the principal of Ski River, and Appellant Karen Davis is his wife.

2. The McCallas also sued for fraud and breach of warranty of merchantability.

3. Baker also cross-claimed for breach of contract, fraud, waste, and declaratory judgment that (1) the right of first refusal in the Baker–Davis lease is void; and (2) the Baker–Davis lease is void for lack of consideration. Baker counterclaimed against the McCallas for tortious interference with use and enjoyment of his land, a declaratory judgment that (1) the McCalla's option is void and unenforceable; (2) the McCallas refused to exercise their option and specific performance for the McCal-

las to sell the boat storage business to Baker; (3) the Glazier lease is void and unenforceable because McCalla intentionally placed Baker under duress to induce him to sign the Glazier lease, and attorney's fees under the Declaratory Judgment Act. The McCallas and Baker settled their claims prior to the judgment now on appeal.

4. Ski River and the Davises also counterclaimed for tortious interference with Baker–Davis relations and lease and a declaratory judgment that: (1) the McCallas did not exercise their option; (2) specific performance for the McCallas to sell the boat storage business to Baker; and (3) the Baker–Davis lease is legal and binding.

tortious interference damages, exemplary damages, and all attorney's fees awarded to Baker against the Davises and Ski River. We will remand this cause to the trial court to determine whether to award attorney's fees for the Davises and Ski River under the Declaratory Judgment Act. We will overrule or not address all other issues.

## BACKGROUND

Arthur William Glazier, Jr. owned 380 acres of land. In 1992, Glazier entered into a 99–year lease covering the entire property with Appellee Walter Baker and his mother, Mary Baker (the "Glazier lease"). In the Glazier lease, the Bakers sub-leased a two-acre tract to the McCallas. This sub-lease states in part:

> That, in the event Lessees [Bakers] shall purchase or otherwise obtain legal ownership of said Property from Lessor [Glazier] and later elect to sell, Lessees [Bakers] hereby grant Sub–Lessees [McCallas] the First Option to Purchase all, or a portion of said Property from Lessees [Bakers] at market value.

In 1993, Glazier died, leaving the property to Walter and Mary Baker. Soon thereafter, Walter Baker deeded his undivided interest to Mary Baker making her the 100% owner of the property.

In June 1994, Mary Baker signed an exclusive one-year listing agreement with Glenna Calahan to sell the entire 380 acres for $2,500 per acre. The listing agreement stated that Baker "shall not rent or lease the Property during the term of this Listing without the prior written approval of [Calahan]" and "shall not negotiate with any prospective buyer who may contact [Mary Baker] directly, but refer all prospective buyers to [Calahan]." In August 1994, Calahan wrote to McCalla notifying him of the listing of the property at $2,500 per acre and giving him 72 hours to exercise his option to purchase. Four days later, McCalla responded that he desired to pursue his rights under the Glazier lease, including but not limited to, his "option to purchase all, or a portion, of said Property at market value." He also objected to the insertion of a 72–hour deadline to exercise his option. He further stated:

> the option cannot be evaluated until market value of the property has been determined and, as a result, does not have to be exercised until such time that either market value has been determined or a bonafide offer to purchase executed by a third party, has been received by me.

McCalla also requested any information Calahan may have regarding the sale of the property, including any information to establish market value. Seven days later, McCalla again requested the same property information from Calahan. Eight days later, Calahan sent him the MLS information sheet, title commitment, and other information.

In October 1994, the McCalla's appraisal was completed, which stated the value to be $1,200 per acre. This value was not disclosed to the Bakers or Calahan. Later in October, Coyt Randal Johnston, on behalf of McCalla, sent a letter to Calahan stating that they were working on a proposal to purchase the property and had secured an appraisal to help evaluate the "current offer of $2,500.00 per acre." He further stated:

> ... [McCalla] and I have determined that it is in our best interest not to make an offer for the property at this time, since we do not want to run the risk of offending you or the Bakers with an offer that is unacceptably low.
>
> I want to emphasize that we continue to be interested in the property and will continue to evaluate our position as time

goes on. We believe, however, that Walt and Mary should have the opportunity to try to sell this property to someone who is willing to pay their purchase price.

Should another buyer submit a contract on the property, [McCalla] will, of course, review the matter in connection with his right of first refusal at that time. In that regard, you should be aware that nothing in this letter is intended to waive or alter any of the rights or obligations between the Bakers and [McCalla] in connection with their various contractual and lease agreements.

In April 1995, Mary Baker reduced her asking price to $1,950 per acre. Later in 1995, Davis contacted Calahan to inquire about purchasing 25 acres of the property at $1,800 per acre, but Mary Baker declined this offer because she wanted to sell the entire 380 acres. In October 1995, Mary Baker increased her asking price to $2,100 per acre.

As early as December 15, 1995, Walter Baker was referring to Stephen Davis as his "money man." In 1996, the Davises friendship with the Bakers increased, and they visited them on a weekly basis.

On January 29, 1996, the Davises presented a "general business plan" for development of the property to a potential investor. This included a preliminary sketch of "The Ski Ranch," including the repair of the boat ramp and roads, establishment of dump stations, building new boat ramp and ski lake sites, establishing river front leases, building a runway, building a store and club, installing a fuel farm, and continuing property studies for new phases.

In February 1996, McCalla wrote to Calahan acknowledging the change in the listing price to $2,100 per acre, but stated that his position had not changed since 1994. He stated that he continued "to be interested in the property, in connection with my Right of First Refusal" and asked to be kept informed.

A few days later on February 12, 1996, Davis entered into a 99–year lease of the entire property with the Bakers (the "Baker–Davis lease"). The Davises told the Bakers that they intended to put in a boat marina, landing strip, and golf course. The Davises did not provide a copy of the general business plan to the Bakers nor did they discuss the plan with the Bakers. The Baker–Davis lease states:

. . .

2.3 For the term of the lease, BAKER will pay real estate taxes on said Property and DAVIS will be responsible for liability insurance.

2.4 All subleases (including but not limited to the sublease with ANTHONY MCCALLA and CHERYL A. MCCALLA d/b/a C.A.M. PROPERTIES [for two acres]) and their income are assigned to DAVIS by BAKER by the execution of this Agreement.

The lease sets the rent at $3,000 per month for 12–1/2 years, then at $75 per month until the lease ends. The lease also contains a non-disclosure clause that does not allow Baker, or any member of his family, to discuss with anyone the Baker–Davis lease or any of its subleases. The First Addendum to this lease provides for an additional rent payment of $1,000 per month to pay for a house for the Bakers.

In March 1996, a First Amendment to the Baker–Davis lease was executed, which assigned the lease from Davis to Ski River. It contains a provision that, if the property is ever sold to anyone, Ski River would retain a leasehold interest for $75 per month in 25 acres of the property.

In April 1996, McCalla made an offer to purchase the 380 acres at $1,200 per acre. Sixteen days later, McCalla's attorney

threatened to file suit. Two days later, Mary Baker died of a heart attack. Following Mary Baker's death: (1) the Davises executed affidavits of heirship for Walter Baker; (2) Walter Baker's attorney drew up a will naming the Davis children as his heirs, Stephen Davis as his executor, and Karen Davis as his trustee; and (3) Walter Baker's attorney drew up a statutory power of attorney naming Stephen Davis as his attorney-in-fact.

In August 1996, a Second Amendment to the Baker–Davis lease was executed, which required the Davis's approval before Baker could sell any of the property's mineral rights. The Second Amendment stated that if Baker elected to sell, Davis had a right of first refusal to buy the property for $600,000 minus any prior lease payments.

In September 1996, the McCallas filed the lawsuit against Walter Baker, Ski River, and the Davises.

## JUDGMENT

The judgment awards tortious interference damages to the McCallas against Stephen Davis, Karen Davis, and Ski River in the amount of $69,000, exemplary damages in the amount of $75,000, attorney's fees in the amount of $247,000, and pre-judgment interest. In addition, attorney's fees were awarded of $25,000 in the event the case is appealed to the Court of Appeals and $15,000 in the event the case is appealed to the Supreme Court of Texas.

The judgment awards tortious interference damages to Walter Baker against Stephen Davis, Karen Davis, and Ski River in the amount of $50,000, exemplary damages in the amount of $20,000, attorney's fees in the amount of $37,000, and pre-judgment interest. In addition, attorney's fees were awarded of $15,000 in the event the case is appealed to the Court of Appeals and $15,000 in the event the case is appealed to the Supreme Court of Texas.

The judgment orders that the Davises and Ski River take nothing by their suit against the McCallas, and contains a declaratory judgment that:

Based on the evidence presented to the Court and the jury's findings, the Court ENTERS a Declaratory Judgment that Plaintiffs Anthony L. McCalla and Cheryl A. McCalla properly exercised their option to purchase the Property.

Based on the evidence presented to the Court and the jury's findings, the Court ENTERS a Declaratory Judgment that the 99 year Davis lease executed on or about February 12, 1996 filed for record on February 15, 1996 at BK 1940PG0011, the First Amendment to Lease executed on or about March 12, 1996 and filed for record on March 11, 1996 at BK 1945PG0915, and the Second Amendment to Lease executed on or about August 28, 1996 and all amendments are void from their inception and are unenforceable.

## ISSUES

We will address the Davises' and Ski River's issues in the following order:

- Error in denying the motion for new trial filed by the Davises and Ski River (issue eleven);

- Whether McCalla's option to purchase the entire property is void and/or was waived (issue three);

- Whether Baker has standing to request the declaratory judgment that the Baker–Davis lease and its amendments are void (issue seven);

- Whether Baker's claims against the Davises and Ski River were brought in breach of a tolling agreement (issue six);

- Error in entering declaratory judgment that the Baker–Davis lease and its amendments are void and unenforceable (issue one);
- Whether the McCallas had standing to request the declaratory judgment that the Baker–Davis lease and its amendments are void (issue four);
- Error in submitting the issue of tortious interference to the jury (issue two);
- Whether the evidence is factually sufficient to support award of lost profits to the McCallas and Baker (issue ten);
- Whether the evidence is legally and factually sufficient to support award of exemplary damages to the McCallas and Baker and whether the exemplary damages were excessive (issue twelve);
- Whether the evidence is legally and factually sufficient to support the award of damages against Karen Davis (issue nine);
- Error in awarding attorney's fees to the McCallas and Baker because they failed to segregate fees between claims (issue five); and
- Whether the evidence is legally sufficient to support jury finding of civil conspiracy (issue eight).

**ISSUE ELEVEN: Error in denying motion for new trial filed by the Davises and Ski River**

The Davises and Ski River filed a motion for new trial asserting newly discovered evidence, *i.e.,* that Walter Baker allegedly committed perjury during the trial regarding disclosures made by the Davises to the Bakers. They argue that had the jury known this, the outcome of the trial would have been different because Baker was the central witness on the issues of fraud, undue influence, and unconscionability. In an affidavit filed in response, Walter Baker contradicts Karen Davis's assertion that he told her his attorney asked him "to forget some things."

It is incumbent upon a party who seeks a new trial on the ground of newly discovered evidence to show that (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). The trial court's ruling on such a motion will not be disturbed on appeal unless an abuse of discretion occurred. *Id.* "A new trial will not be granted on the ground of newly-discovered evidence, unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purpose of impeachment." *New Amsterdam Cas. Co. v. Jordan,* 359 S.W.2d 864, 866 (Tex.1962) (quoting *Conwill v. Gulf, C. & S.F. Ry. Co.,* 85 Tex. 96, 19 S.W. 1017 (1892)).

We find the evidence submitted by the Davises and Ski River was cumulative and would only have served to impeach Baker's trial testimony. We cannot say that any impeachment would have probably produced a different result. *See Jackson,* 660 S.W.2d at 809; *New Amsterdam,* 359 S.W.2d at 866. The trial court did not abuse its discretion in denying the motion for new trial on these grounds. *See Jackson,* 660 S.W.2d at 809. We overrule issue eleven.

**ISSUE THREE: Error in denying the Davises' and Ski River's request for declaratory judgment that the McCallas' "first option to purchase" is void and unenforceable, and/or was waived**

Ski River argues that the trial court erred in denying its request for declaratory judgment that the McCalla's purported "first option to purchase," provided in the Glazier lease, is void and unenforceable because it is too indefinite and violates the rule against perpetuities. In the alternative, they argue that it was not exercised or was waived.

The pertinent part of the Glazier lease provides:

> That, in the event Lessees [Bakers] shall purchase or otherwise obtain legal ownership of said Property from Lessor [Glazier] and later elect to sell, Lessees [Bakers] hereby grant Sub-Lessees [McCallas] the First Option to Purchase all, or a portion of said Property from Lessees [Bakers] at market value.

■ We review declaratory judgments under the same standards as other judgments and decrees. *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Lidawi*, 112 S.W.3d at 730. Here, the trial court asked the jury whether McCalla had a first option to purchase and whether he exercised the option. In a second jury question, the jury found that the McCallas exercised their option in accordance with the terms of the first option under the Glazier Lease. However, the Davises and Ski River attack the option provision as void as a matter of law.

■ The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain. RESTATEMENT (SECOND) OF CONTRACTS § 33(1) (1981). Thus, the actions of the parties may conclusively establish their

intention to enter a binding agreement even if some terms are left for future agreement. *Id.* at cmt. a. To that end, Texas courts prefer to validate transactions rather than void them. *Dahlberg v. Holden*, 150 Tex. 179, 238 S.W.2d 699, 701 (1951). A court may not create a contract where none exists and they generally may not interpolate or eliminate material terms. *Id.* However, parties may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation. *See Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 555 (Tex.1972). In certain situations, a court may uphold an agreement by supplying missing terms, such as implying a reasonable price. *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex.1966).

■ The Restatement asserts that contract terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981). This conforms to the policy that parties, and not the courts, should make contracts. Where the parties intended to make an agreement and there is a certain basis for granting a remedy, courts should find the contract terms definite enough to provide a remedy. *Id.* at cmt. b. Uncertainty of terms can, however, preclude one remedy without affecting others. For example, less certainty is necessary in a suit for damages than one for specific performance. *See Kirkwood & Morgan, Inc. v. Roach*, 360 S.W.2d 173, 176 (Tex.Civ.App.-San Antonio 1962, writ ref'd n.r.e.); *but see Bendalin*, 406 S.W.2d at 900 (the Supreme Court held that lack of an express agreement on price was not fatal to maintenance of a suit for specific performance of an oral agreement to purchase stock).

When essential terms are missing, courts often find no more than an agree-

ment to agree. *See Pine v. Gibraltar Sav. Ass'n,* 519 S.W.2d 238, 244 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.). Courts have, however, implied terms when the surrounding circumstances left little doubt as to the parties' intentions. *See Morgan v. Young,* 203 S.W.2d 837, 846 (Tex.Civ.App.-Beaumont 1947, writ ref'd n.r.e.).

■ Here, the contract clause sets out with certainty the term that the Bakers must obtain legal ownership as a prerequisite to validity of any obligation. However, the contract clause leaves many terms for future negotiation and agreement. These include:

(1) What is the definition of "said Property" (the entire 380–acre tract or the two acres being subleased by the McCallas);

(2) What is the definition of a "portion" of said Property;

(3) Whether listing property on the market (*i.e.,* solicitation for offers) is an election to sell;

(4) Whether a listing agreement is an election to sell;

(5) Whether a bona fide offer from a third party purchaser was required before the option could be exercised;

(6) Whether an election to sell a portion of the property was sufficient for McCalla to exercise the option;

(7) When market value is to be determined;

(8) What is the method to determine market value;

(9) How long does McCalla have to exercise his option after notification of Baker's election to sell;

(10) Whether the McCallas can ever compel a sale of all or a portion of the Property;

(11) Whether Baker can change her mind after an election to sell the

property if she is dissatisfied with an offer from McCalla in comparison with either a bona fide purchaser offer or retaining the property; and

(12) For how long is the option valid?

■ These provisions requiring future negotiation suggest that the parties are only agreeing to make a future contract. An agreement leaving material terms to be agreed upon later is not definite and specific as to material and essential terms and is, therefore, unenforceable. *See Parker Chiropractic Research Foundation v. Fairmont Dallas Hotel Co.,* 500 S.W.2d 196, 201 (Tex.Civ.App.-Dallas 1973, no writ). When essential terms are missing, we may find no more than an agreement to agree. *See Pine,* 519 S.W.2d at 244. Furthermore, a contract providing for an agreement to be negotiated in the future is void. *See, e.g., Texas State Optical v. Caylor,* 387 S.W.2d 461, 464 (Tex. Civ.App.-Beaumont 1965, writ ref'd n.r.e.). Therefore, we find the "first option to purchase" is a void provision of the Glazier lease. Thus, the jury findings are immaterial.

It was error for the trial court to deny entering a declaratory judgment that the McCalla's first option to purchase is indefinite and void. In addition, it was error to enter a declaratory judgment that the McCallas exercised their option. We need not address whether the option was waived because we have found the option void.

We sustain issue three. We will reverse that part of the judgment that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment that the McCallas properly exercised their option to purchase the Property. We will render judgment as follows:

Based on the evidence presented to the Court, the Court RENDERS a Declaratory Judgment that Plaintiffs Anthony L. McCalla's and Cheryl A. McCalla's option to purchase the Property is void as a matter of law.

**ISSUE SEVEN: Baker's standing to request declaratory judgment to declare Baker–Davis lease and its amendments are void.**

■ The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993) (citing *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 114, 283 S.W.2d 722, 724 (1955)). The Declaratory Judgment Act provides that "all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (Vernon 1997).

The Baker–Davis lease states:

The Parties of this Agreement ("Agreement") are as follows:

1.1 MARY BAKER and her son, WALT BAKER (collectively referred to as "BAKER").....

The first amendment to the Baker–Davis lease states:

THIS FIRST AMENDMENT TO LEASE (this "First Amendment") is dated to be effective as of the 12th day of March, 1996, by and between MARY BAKER and her son, WALT BAKER (collectively referred to herein as "BAKER").....

At the time of the second amendment, Walter Baker was the owner of the property and the second amendment states:

THIS SECOND AMENDMENT TO LEASE (this "Second Amendment") is dated to be effective as of the 28th day of August, 1996, by and between WALT BAKER ("Walt Baker") and SKI RIVER DEVELOPMENT[S], INC., a Texas Corporation ("Ski River").

■ As signatory of the lease and its amendments, Walter Baker was in privity of contract with the Davises and Ski River. Thus, the controversy that exists between Baker, the Davises, and Ski River will be affected by the declaratory judgment sought. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a); *Texas Ass'n of Bus.*, 852 S.W.2d at 446. We find that Walter Baker has standing. We overrule issue seven.

**ISSUE SIX: Baker's claims against the Davises were brought in breach of a tolling agreement**

On September 4, 2001, Baker, the Davises, and Ski River entered a "tolling agreement" that prohibited the Davises and Baker from asserting any cross-claims against each other until the McCalla claims were resolved. In violation of this tolling agreement, Baker asserted cross-claims against the Davises and Ski River on October 23, 2002. However, on November 21, 2002, the parties signed a Rule 11 agreement that "Walt Baker will maintain his cross claims in this case." Thus, any violation of the tolling agreement was cured by the Rule 11 agreement. We overrule issue six.

**ISSUE ONE: Error by entering declaratory judgment voiding the Baker–Davis lease and its amendments**

The trial court entered a declaratory judgment that the Baker–Davis lease and its amendments are void based on the jury findings that the Baker–Davis lease and its amendments were procured by fraud, undue influence, and unconscionability.

■ If a contract is unconscionable, it is unenforceable. *See In re Turner*

*Bros. Trucking Co.,* 8 S.W.3d 370, 375 (Tex.App.-Texarkana 1999, no pet.) (referring to an arbitration agreement); *El Paso Natural Gas Co. v. Minco Oil & Gas Co.,* 964 S.W.2d 54, 60 (Tex.App.-Amarillo 1997), *rev'd on other grounds,* 8 S.W.3d 309 (Tex.1999) (referring to gas purchase agreement under the Texas Business and Commerce Code § 2.302(a)); *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns,* 710 S.W.2d 604, 609 (Tex.App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.) (referring to disclaimer provisions in a lease); RESTATEMENT (SECOND) OF CONTRACTS § 208. Proof of unconscionability begins with two broad questions: (1) the procedural aspect, *i.e.,* how did the parties arrive at the terms in controversy; and (2) the substantive aspect, *i.e.,* are there legitimate commercial reasons justifying the terms of the contract. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.-San Antonio 1996, no pet.). In other words, in deciding the fairness of a contract's substantive terms, the court must also consider whether there were "procedural abuses," such as an unfair bargaining position between the parties at the time the agreement was made. *Tri–Continental,* 710 S.W.2d at 609. Under Texas law, the party asserting unconscionability of a contract bears the burden of proving *both* procedural and substantive unconscionability. *In re Turner,* 8 S.W.3d at 375; *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.Civ.App.-Texarkana 1975, no writ.).

 In determining whether a contract is unconscionable, we must examine (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Wade,* 524 S.W.2d at 86. The totality of the circumstances must be assessed as of the time the contract was formed. *El Paso,* 964 S.W.2d at 61. It is important to consider whether there is any gross disparity in the values exchanged. RESTATEMENT (SECOND) OF CONTRACTS, § 208, cmt. c. Gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms. *Id.* at cmt. d. Factors that may contribute to an unconscionable bargaining process include: (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement. *Id.* The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse—the circumstances surrounding the negotiations must be shocking. *El Paso,* 964 S.W.2d at 62.

 The ultimate question of unconscionability of a contract is one of law, to be decided by the court. *El Paso,* 964 S.W.2d at 60; *see also In re Turner,* 8 S.W.3d at 375; *Tri–Continental,* 710 S.W.2d at 609. In *El Paso,* the court stated:

This suggests that our review of the matter is *de novo.* Yet, it cannot be forgotten that the decision of whether some agreement is or is not unconscionable is dependent upon the existence of facts which allegedly illustrate unconscionability. And, as to the existence of those facts, our review is not *de novo.* In other words, we cannot review the

record, divine our own inferences from the evidence contained therein, resolve conflicts in same, or decide what evidence to believe and what not to believe. The power to do those things, that is, to find facts, lies with the trial court. Once it has exercised that power, we must then defer to the findings made. And, as long as the findings enjoy sufficient evidentiary support, they cannot be disturbed, even though we may have construed the evidence differently. Nevertheless, this does not prevent us from assessing whether the findings made illustrate unconscionability for, again, that is a question of law. Nor does it prevent us from deciding whether the evidence of record, when viewed in a light most favorable to the court's findings and regardless of its potential inferences, illustrates unconscionability, for that too is a question of law. Interestingly, at least one court has likened the mental gymnastics in which we must partake to the standard of abused discretion. *See, e.g., Pony Express Courier Corp. v. Morris,* 921 S.W.2d at 820. Use of the latter is helpful in situations involving mixed questions of law and fact, according to the *Pony Express* court. *Id.* It enables the reviewing court to reassess *de novo* that part of the decision involving the law and its application while recognizing the trial court's authority to weigh and interpret the evidence. *Pony Express Courier Corp. v. Morris,* 921 S.W.2d at 820; *accord, Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992); *see* RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. f (stating that the appellate court will consider whether the proper standards were applied). Given this, we too adopt it as indicative of the framework in which the reviewing court must act. *El Paso,* 964 S.W.2d at 60–61.

Here, the trial court submitted the issue of unconscionability to the jury, and the jury found the lease, its first addendum, first amendment, and second amendment were the result of unconscionability. The declaratory judgment entered stated that the lease and its first and second amendments are void from their inception and are unenforceable. Because an unconscionable contract is unenforceable, we will determine if this declaratory judgment resulted from a proper determination of unconscionability. The trial court did not make any separate factual findings regarding unconscionability.

■ We find the following evidence supports procedural unconscionability of the Baker–Davis lease:

(1) The Davises were aware that the Bakers were in desperate need for money at the time they signed the lease—the Bakers were living in a trailer home heated by a stove and were so far in debt that they needed money to survive;

(2) The Davises told the Bakers that Mary Baker would be able to get Medicaid if she entered the lease;

(3) Ms. Calahan met with the Bakers and told them that the sale of the property would be better in terms of long-term income and the tax consequences; the Davises convinced the Bakers that the lease was better because it would give them steady monthly income;

(4) Walter Baker testified that he and Mary felt they had to enter the lease;

(5) The Bakers did not see the final draft of the lease until the day they signed it;

(6) Walter Baker testified that he and Mary felt they could not change anything in the lease before signing it;

(7) Walter Baker testified that he spoke to his CPA in general terms after his first meeting with Davis regarding whether it would be easier to sell it in one lump sum or lease it and get a monthly payment—the CPA said he needed more details to run the numbers (Baker never went back to the CPA);

(8) Walter Baker testified that he and Mary were the only ones to review the terms of the lease;

(9) The Davises did not explain any of the terms to the Bakers before they signed the lease;

(10) Walter Baker testified that he did not understand the legal language and did not know what the terms meant (*e.g.*, severability, specific performance, release, warranty, assignment, termination, possessory rights);

(11) The Davises never told the Bakers that they had tried to purchase 25 acres of this property the previous summer;

(12) When Davis was asked how he expected the Bakers to survive after the 12–1/2 years, he testified that they could have survived, Walter Baker could work, and "[i]t was a window of opportunity for both of us."

(13) The Davises told the Bakers that they planned to put in a boat marina, landing strip and golf course. However, the Davises did not provide a copy of their general business plan and did not mention the contents of this plan, which could have affected the real estate taxes. These plans included development of dump stations for trailer waste, a new boat area, an engineered ski lake, electricity, excavation of new channels, installation of a fuel farm, and marketing of ski lake site lots as long-leasehold property;

(14) Walter Baker testified that he did not think he was selling his property to the Davises;

(15) Walter Baker testified that Davis brought so many papers to him that he was confused as to what was what;

(16) The Bakers were not experienced with formal contracting—they had about 35–40 current lake-lot subleases but they were informal agreements without any property descriptions;

(17) The Bakers did not keep any accounting books for their store;

(18) The Bakers filed tax returns for their farm, but never filed tax returns for anything else; and

(19) The Davises' attorney drafted the lease.

■ We find the following terms support substantive unconscionability of the Baker–Davis lease:

(1) The Bakers were required to pay all real estate taxes for the 99–year term of the lease, which were estimated by Calahan at $132.92 per month for the next 12–1/2 years ($1,595 per year);

(2) The Davises had to pay $3,000 per month for only 12–1/2 years; after that period, their rent would decrease to $75 per month, which is less than the estimated tax payment;

(3) All current sublease income would be assigned to the Davises (this was estimated at $1,668 per month based on testimony); thus, the Bakers were already entitled to this amount and would only get $1,332 more per month than they were currently entitled to and substantially less after 12–1/2 years;

(4) The Davises could terminate the lease at any time by simply giving written notice;

(5) The Bakers lost all possessory rights (except the right to have a small store through December 1996);

(6) The Bakers could not discuss or be a party to any communication about this lease and/or any subleases that the Davises may enter under this lease;

(7) The release clause prevented the Bakers from selling the land under their current listing agreement with Calahan, and if the Bakers did sell the land, they would owe the Davises $10,000 plus all rent payments made to that point; and

(8) The release clause prevented the Bakers from selling the land while the lease was in effect.

■ This evidence illustrates unfair bargaining positions, unfair terms, gross disparity in the value exchanged, no substantial benefit to the Bakers, shocking circumstances of the procurement of the lease, and shocking/gross lease terms. *See Wade*, 524 S.W.2d at 86; *El Paso*, 964 S.W.2d at 61; RESTATEMENT (SECOND) OF CONTRACTS, § 208. Evidence of both procedural and substantive unconscionability of the Baker–Davis lease also supports a determination that the first addendum and the first and second amendments to the lease are unconscionable. We find that the trial court did not abuse its discretion in entering a declaratory judgment finding the Baker–Davis lease and its amendments unenforceable. *See El Paso*, 964 S.W.2d

at 60–61. However, the finding of unconscionability would not make the Baker–Davis lease void.[5]

We sustain issue one in part and overrule in part. We will reform the declaratory judgment to read:

> Based on the evidence presented, the Court RENDERS a Declaratory Judgment that the 99–year Davis lease executed on or about February 12, 1996, filed for record on February 15, 1996, at BK 1940PG0011, the First Amendment to Lease executed on or about March 12, 1996, and filed for record on March 11, 1996, at BK 1945PG0915, and the Second Amendment to Lease executed on or about August 28, 1996, and all amendments thereto are unconscionable and thus unenforceable from their inception.

**ISSUE FOUR: McCalla's standing to request declaratory judgment to void Baker–Davis lease**

Because we found in issues one and seven that Baker has standing to request the declaratory judgment to void the Baker–Davis lease and that the lease and all its amendments unenforceable, we need not address whether the McCallas have standing to do the same.

**ISSUE TWO: Error in submitting issues of tortious interference to jury**

■ It is unclear which tortious interference jury questions are at issue here. Thus, we will review the three jury questions relating to tortious interference. In question 5, the jury found that Ski River

---

5. We note that even if we were to address the findings of fraud and undue influence, we would not find the lease and its amendments void, and at most, we would find the lease voidable based on undue influence. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 177 (1981) ("Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare;" "If a party's manifestation of assent is induced by undue influence by the other party, the contract is voidable by the victim.").

and the Davises intentionally interfered with the Glazier lease between the McCallas and Baker. In question 24, the jury found that Ski River and the Davises wrongfully interfered with the McCallas' prospective contractual relation with Baker. Because we have found that McCallas' option is void, we find that the trial court erred in submitting these two jury questions as a matter of law. There is no evidence that the Davises and Ski River interfered with the McCallas' valid lease rights.

In question 25, the jury found that Ski River and the Davises tortiously interfered with Baker's use and enjoyment of his property. Ski River objected that this is not a cause of action upon which relief can be based and it is duplicative of other relief requested.

Under the general rule, there are at least two causes of action for tortious interference: (1) tortious interference with the right to dispose of property; and (2) tortious interference with the peaceful use and enjoyment of property rights. *Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex.App.-Corpus Christi 2002, no pet.). A cause of action for tortious interference with the right to dispose of property is, in essence, a claim for tortious interference with a prospective contract or prospective business relation. *Id.* at 381. Texas law protects prospective contracts from interference. *Id.* A cause of action for tortious interference with peaceful use and enjoyment of property is, in essence, a claim for intentional invasion of, or interference with, property rights. *Id.* at 382. This cause of action also exists under Texas law. *Id.* at 383. Thus, tortious interference with Baker's use and enjoyment of his land is a separate cause of action and is not cumulative. *See id.* at 380–83.

We sustain issue two as to questions 5 and 24 and overrule it as to question 25.

We turn to the tortious interference damages in issue ten.

### ISSUE TEN: Factual sufficiency of lost profits awarded to the McCallas and Baker

In Texas, a party bringing suit for tortious interference with a contract must prove four elements: (1) a contract subject to interference exists; (2) the act of interference was willful and intentional; (3) the intentional act proximately caused the plaintiff's damage; and (4) actual damage or loss occurred. *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 665 (Tex.1990). The first element requires the existence of a valid contract; a void contract cannot serve as the basis for a tortious interference claim. *See id.; Clements v. Withers*, 437 S.W.2d 818, 821 (Tex.1969).

As to the tortious interference in jury question 5, because there can be no tortious interference with a void contract, we reverse the McCallas' tortious interference damages award of $69,000 against Ski River and the Davises. We sustain issue ten as to the McCallas' tortious interference damages award.

According to question 26, the damages awarded to Baker for tortious interference with use and enjoyment of his land were either lost profits and/or damages for loss of use and enjoyment of his property. Ski River and the Davises argue only that there was insufficient evidence to support any lost profits awarded to Baker.

To successfully challenge a multi-element damages award (one dollar amount for multiple elements of damages) on appeal, an appellant must address all of the elements and show that the evidence is factually insufficient to support the entire damages award. *Price v. Short*, 931

S.W.2d 677, 688 (Tex.App.-Dallas 1996, no writ); *Greater Houston Transp. Co. v. Zrubeck,* 850 S.W.2d 579, 589 (Tex.App.-Corpus Christi 1993, writ denied). A failure to address an element of damages results in waiver of the sufficiency challenge. *Price,* 931 S.W.2d at 688.

Thus, by failing to challenge the sufficiency of the evidence of lost use and enjoyment, Ski River and the Davises have waived their factual sufficiency challenge on the damages awarded to Baker. *See id.*

We overrule issue ten as to Baker's tortious interference damages award.

> **ISSUE TWELVE: Legal and factual sufficiency of evidence of exemplary damages awarded to the McCallas and Baker and whether the exemplary damages were excessive**

Because we have reversed the McCallas' tortious interference damages in issue ten, we must also reverse the McCallas' accompanying exemplary damages of $75,000 against Ski River and the Davises. We sustain issue twelve as to the McCallas' exemplary damages.

As to Baker, Ski River and the Davises first argue legal and factual sufficiency of the evidence to support a finding that the harm to Baker resulted from fraud or malice. The argument in their appellate brief consists of: "There was no evidence to support the jury's findings that the harm to the McCallas and Baker resulted from fraud or malice (Questions 8 and 28); in the alternative, the findings were against the great weight and preponderance of the evidence." Second, they argue that if the evidence supporting an award of exemplary damages is sufficient, the exem-

plary damages awarded are excessive ($50,000 in actual damages and $20,000 [6] in exemplary damages).

### Legal and factual sufficiency

■ Ski River and the Davises' legal and factual sufficiency argument is one sentence in their 50 page brief and contains no citations to the reporter's record. The Rules of Appellate Procedure require that "[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to authority and to the record." TEX.R.APP. P. 38.1(h), 38.2(a)(1). This is especially important in a case such as this with a voluminous appellate record. By their failure, Ski River and the Davises have waived their legal and factual sufficiency complaints about the jury findings. *E.g. Franklin v. Enserch, Inc.,* 961 S.W.2d 704, 711 (Tex.App.-Amarillo 1998, no pet.); *Sisters of Charity of the Incarnate Word v. Gobert,* 992 S.W.2d 25, 31 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Leyva v. Leyva,* 960 S.W.2d 732, 734 (Tex.App.-El Paso 1997, no writ).

### *Excessive*

■ Exemplary damages must be reasonably proportioned to compensatory damages. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). There is no set rule between the amount of actual and exemplary damages that will be considered reasonable. *Id.* That determination is dependent upon the facts of a particular case. *Id.* Factors to consider in determining whether an award of exemplary damages is reasonable include: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties con-

---

**6.** Ski River and the Davises' brief states $75,000 in exemplary damages; however, the answer to jury question 29 is $20,000 in ex-

emplary damages, and the judgment awarded $20,000.

cerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.*

The ratio of exemplary damages is approximately 0.40 the amount of compensatory damages for Baker. Considering the *Kraus* factors, we find this ratio is not excessive. *See id.*

We overrule issue twelve as to Baker's exemplary damages.

### ISSUE NINE: Legal sufficiency of evidence to support judgment against Karen Davis

The tortious interference damages awarded to the McCallas against Karen Davis have been reversed under issue ten. Ski River and the Davises argue that there is no evidence to support the tortious interference damages awarded to Baker against Karen Davis. They argue she was only occasionally present, married to Stephen Davis, and did not sign the lease or its amendments.

We review no-evidence points by considering only the evidence and all reasonable inferences that support the jury's finding while disregarding all evidence and inferences to the contrary. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no-evidence challenge must fail. *Id.* There is "some evidence" when the proof furnishes a reasonable basis for reasonable minds to reach differing conclusions as to the existence of a crucial fact. *Id.* If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995). Generally, if the court of appeals sustains a "no evidence" point, it is the court's duty to render judgment for appellant. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex.1986) (quoting *Nat'l Life Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969)).

A no-evidence point must and can only be sustained when the record reveals: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; and (4) the evidence conclusively establishes the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)).

We have recited the evidence about procedural unconscionability. Karen Davis also testified that she (1) was very familiar with the landmarks on the property; (2) had an emotional attachment to the property; (3) first approached the Bakers about leasing the property in January 1996 with Mr. Davis; (4) was involved in the negotiation process with the Bakers; (5) took the final draft to the Bakers with Mr. Davis; and (6) was present when everyone signed the lease.

Considering only the evidence and all reasonable inferences that support the jury's finding of tortious interference of use and enjoyment of his property by Karen Davis, we find legally sufficient evidence to support this finding, *i.e.*, more than a scintilla of evidence to support the finding. *See Orozco*, 824 S.W.2d at 556; *Juliette Fowler*, 793 S.W.2d at 666 n. 9. We overrule issue nine.

### ISSUE FIVE: Error in awarding attorney's fees to McCallas and Bakers because they failed to segregate fees between claims

Both the Bakers and the McCallas requested attorney's fees under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001, 38.001 (Vernon 1997). In a declaratory judgment action, a court "may award ... reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009. (Vernon 1997).

■ An award of attorney's fees to the McCallas would not be "equitable and just" after finding that their option is void. *See id.* Thus, we sustain issue five as to the McCallas' attorney's fees and reverse all attorney's fees awarded to the McCallas.

■ Because we reformed the declaratory judgment that the Baker–Davis lease is unenforceable, we must assess whether Baker is entitled to attorney's fees for this declaratory judgment. To show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 11. Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney's fees may recover the entire amount covering all claims. *Id.* We find that Baker's cross-claims were so intertwined with his declaratory judgment cross-claims that segregation of attorney's fees was not required. *See id.* at 10–11.

Thus, we overrule issue five as to the attorney's fees awarded to Baker.

■ In addition, the jury found the reasonable and necessary attorney's fees for the Davises and Ski River are $100,000 for preparation and trial, $15,000 for an appeal to the Court of Appeals, and $15,000 for an appeal to the Supreme Court of Texas. We must remand this cause to the trial court to determine whether to award "equitable and just" attorney's fees to Ski River and the Davises and against the McCallas under the Declaratory Judgment Act, based on our holding under issue one. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009.

**ISSUE EIGHT: Legal sufficiency of civil conspiracy finding.**

Because the trial court did not enter a judgment on this jury finding, we need not address this issue.

**CONCLUSION**

We have sustained issue three, overruled issues six, seven, nine, and eleven, and overruled in part and sustained in part issues one, two, five, ten, and twelve. We did not need to address issues four and eight. Thus, we reverse that part of the judgment that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment that the McCallas properly exercised their option to purchase the Property. We render judgment as follows:

> Based on the evidence presented to the Court, the Court RENDERS a Declaratory Judgment that Plaintiffs Anthony L. McCalla's and Cheryl A. McCalla's option to purchase the Property is void as a matter of law.

We will reform the declaratory judgment to read:

> Based on the evidence presented, the Court RENDERS a Declaratory Judg-

ment that the 99–year Davis lease executed on or about February 12, 1996, filed for record on February 15, 1996, at BK 1940PG0011, the First Amendment to Lease executed on or about March 12, 1996, and filed for record on March 11, 1996, at BK 1945PG0915, and the Second Amendment to Lease executed on or about August 28, 1996, and all amendments · thereto are unconscionable and thus unenforceable from their inception.

We reverse and delete from the judgment the tortious interference damages, exemplary damages, and all attorney's fees awarded to the McCallas against the Davises and Ski River. We affirm the judgment awarding tortious interference damages, exemplary damages, and all attorney's fees to Baker against the Davises and Ski River. We remand. this cause to the trial court to determine whether to award attorney's fees to the Davises and Ski River and against the McCallas under the Declaratory Judgment Act.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

If it is within our job description to come up with a laundry list of questions that could pose a problem in the subsequent enforcement of a contract, I assure you that only the wealthiest of clients could afford to have enforceable contracts drafted. Fortunately that is not the law. That is, however, what the majority has done to determine McCalla's contract is "void." I would not.

In June 1994, Mary Baker took the necessary steps to list the property with a broker. At this point, she had affirmatively triggered the provisions of her contract with McCalla that if she decided to sell, McCalla had certain rights. I agree with McCalla that Mary's effort to include a 72 hour response time for McCalla to act on the rights was not effective because it was not part of that contract. If time to act in a contract is not specified, a reasonable time is implied.

By October of 1994, McCalla had an appraisal of the fair market value completed. It would have been a jury issue of whether this was a reasonable time to obtain such an appraisal and then immediately act on the contract. We need not decide that issue, however, because McCalla did not attempt or endeavor to act on his rights under the contract at that time. In fact, McCalla did not act on this appraisal of the fair market value, by attempting to exercise his rights under the contract, until April 1996, almost two years after Mary decided to sell the property, and well over a year after the appraisal was received by McCalla. Many events occurred during this extended delay. The length of the delay alone would raise the issue of whether the appraised value had changed, and the jury did make such findings.

Under these circumstances, I have no problem in determining, as a matter of law, that McCalla failed to exercise his rights under the contract in a timely manner. His efforts to delay the exercise, for whatever reason, are ineffective because, like the 72 hour provision, they are not in the contract.

I do not, however, find any reason to interfere with an agreement freely entered into by these parties by declaring the provision void as the majority has done. I would sustain issue three on the basis that McCalla waived his rights under the agreement by failing to timely exercise them.

It does not appear that my disagreement with the majority on resolving this issue would substantively impact the disposition of the appeal. I concur.