**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 17, 2012

No. 11-50282

Lyle W. Cayce
Clerk

PHILADELPHIA INDEMNITY INSURANCE CO.,

Plaintiff-Appellee

v.

SSR HOSPITALITY, INC.,

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Texas
1:08-CV-680

Before KING, JOLLY, WIENER, Circuit Judges.

WIENER, Circuit Judge:[*]

Plaintiff-Appellee Philadelphia Indemnity Insurance Co. ("PIIC") filed a diversity-based declaratory judgment action to determine its rights and obligations under an insurance policy with Defendant-Appellant SSR Hospitality, Inc. ("SSR") with respect to a hotel that SSR had purchased. PIIC moved for summary judgment, contending that a release which SSR had signed barred all of its insurance claims. SSR filed a response and countermotion for summary judgment, arguing that the release is ineffective because it fails

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50282

properly to name PIIC and asserting the affirmative defense of unconscionability. The district court granted summary judgment to PIIC and denied SSR's countermotion for summary judgment. PIIC then filed a Rule 54 motion for attorneys fees, claiming that it is entitled to attorneys fees under the Texas Declaratory Judgment Act. The district court awarded PIIC $280,641.38 in attorneys fees and $26,070.53 in costs. SSR now appeals the district court's summary judgment and award of attorneys fees to PIIC. We affirm.

## I. Facts & Proceedings

### A. Facts

SSR comprises three individual shareholders who formed it in 2006 as a Texas corporation to acquire and operate the Hawthorn Suites Hotel (the "Hotel") in Austin, Texas. SSR purchased the Hotel in March 2007 for $5,725,000. To do so, SSR gave a $4,580,000 promissory note to Wachovia Bank, N.A. The note specifies an interest rate of 6.03% per annum and monthly payments of $27,547.81 for 10 years. SSR hired Aalliant Management, LLC ("Aalliant") to perform specified management services for the Hotel. At that time, the Chief Executive Officer of Aalliant was Prasanth Rayapudi. SSR also purchased an insurance policy from PIIC which included coverage for property damage, contents, and business income, for the period of March 2, 2007 to March 2, 2008.

In August 2007, the floor of a conference room in the Hotel collapsed. After SSR submitted an insurance claim, PIIC investigated, dispatching an insurance adjuster and an engineer to the Hotel. During its investigation, PIIC determined that the property damage predated the policy's inception, so that repairs would not be covered by the policy. PIIC initially estimated that cost of repair could exceed $450,000. Through its agent, J.A. Greenhaw, PIIC then sent a letter to SSR, stating that the majority of the cost to make corrective repairs to the Hotel was not covered by the policy. Nonetheless, PIIC also stated that

2

the expenses for repairs to the conference room floor would be covered, minus a $2,500 deductible. PIIC then wrote a letter of "partial declination" to SSR, explaining that it was partially denying SSR's claim.

After receiving the denial of coverage, SSR executed a release (the "Release") in consideration of a payment of $13,984.39, being the cost of the floor repairs minus the deductible. The Release stated in part:

> In CONSIDERATION of the sum of <u>thirteen thousand nine hundred eighty-four + 39 cents</u>, Dollars ($13,984.39), to me/us paid, the receipt whereof is hereby acknowledged, I/we, <u>SSR Hospitality, Hawthorne Suites by Hyatt</u> (being of lawful age) do hereby release and forever discharge <u>Philadelphia Insurance Company</u>, heirs, administrators, executors, successors and assigns, from any and all action, causes of action, claims, and demands whatsoever for, upon, or by reason of any damage, loss or injury and all consequential damage, which heretofore have been or which hereafter may be sustained by me/us in consequence of <u>collapse and or water damage associated with loss reported 9/5/2007 with date of loss 8/22/2007 at 7800 Riverside Dr., Austin, TX</u>.

Even though the Release named "Philadelphia Insurance Company" —— an affiliated but separate entity ——— as the released party, counsel for SSR acknowledged at oral argument that Philadelphia Insurance Company had no involvement in issuing the policy to SSR. Furthermore, the Release included the number of the policy that PIIC issued to SSR and was signed by Mr. Rayapudi, CEO of Aalliant, on behalf of SSR.

After receiving PIIC's payment for the floor repairs, SSR filed a claim for the additional damages arising out of the August 2007 collapse. PIIC denied SSR's additional claims.

## B. Proceedings

SSR continued to pursue its claims, so PIIC filed a diversity jurisdiction-based declaratory judgment action seeking (1) a declaration of its rights and obligations under the policy with respect to the damages to the Hotel and (2) attorneys fees pursuant to the Texas Declaratory Judgment Act (the "Texas

No. 11-50282

DJA")[1] and the Federal Declaratory Judgment Act.[2]  In June 2010, PIIC moved for summary judgment, insisting that the Release signed by the parties barred all of SSR's claims.  SSR filed a response and countermotion for summary judgment, arguing, among other things, that the Release was ineffective because it did not properly name PIIC as the released entity; and, even if the Release were effective, it was unconscionable.  The district court granted PIIC's motion for summary judgment and denied SSR's countermotion for summary judgment, holding that (1) the Release adequately named PIIC as the released entity, and (2) the Release was not unconscionable and therefore barred all of the insurance claims filed by SSR.

PIIC then filed a Rule 54 motion for attorneys fees, claiming such fees under the Texas DJA.  SSR responded, contending that the district court's order granting summary judgment barred a claim for attorneys fees and that the amount of requested fees was unreasonable.  The district court granted PIIC's motion, awarding it $280,641.38 in attorneys fees and $26,070.53 in costs.  SSR appeals the district court's summary judgment and award of attorneys fees, essentially repeating the arguments that it made in the district court.[3]

---

[1]  TEX. CIV. PRAC. & REM. CODE § 37.009.

[2]  28 U.S.C. § 2202.

[3]  SSR contends that (1) the Release does not effectively name PIIC and is, therefore, invalid, (2) the Release is unconscionable and, therefore, is not enforceable, and (3) attorneys fees are barred by the district court's summary judgment and final order and are unreasonable.  As further discussed below, SSR does not appeal the district court's award of attorneys fees under this court's holding in *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th. Cir. 1998) which states that "a party may not rely on the [Texas Declaratory Judgment Act] to authorize attorney's fees in a diversity case because the statute is not substantive law."

No. 11-50282

## II. Summary Judgment

### A. Standard of Review

We review a district court's summary judgment *de novo*, applying the same legal standards as the district court.[4] Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.[6] "[A]ll facts and evidence must be taken in the light most favorable to the non-movant."[7]

To avoid summary judgment, however, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.[8] We are "not limited to the district court's reasons for its grant of summary judgment" and "may affirm the district court's summary judgment on any ground raised below and supported by the record."[9]

---

[4]   *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011).

[5]   FED. R. CIV. P. 56©.

[6]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]   *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

[8]   *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir.2006).

[9]   *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

5

## B. Release

Under Texas law[10], a release is a contract.[11]  Whether a contract is ambiguous is a question of law for a court to decide by looking at the contract as a whole in light of the circumstances present at the time the contract was created.[12]  If a contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law.[13]

In construing a written contract, the court's primary concern is to ascertain the true intentions of the parties as expressed in the agreement.[14]  To do so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless.[15]  Specifically, the contract should be read as a whole rather than by isolating any one phrase, sentence, or section of the agreement.[16]  The language contained in the contract should be given a plain grammatical meaning unless to do so would defeat the parties' intent.[17]

---

[10]  Because PIIC filed its declaratory judgment action in federal court pursuant to diversity jurisdiction, Texas substantive law applies.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide. *Transcon. Gas Pipeline Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992) (citations omitted).

[11]  *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990).

[12]  *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983) (citation omitted).

[13]  *Id.* at 393.

[14]  *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted).

[15]  *Id.*

[16]  *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex. 1995).

[17]  *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999) (citation omitted).

No. 11-50282

SSR argues that the Release is ineffective because it names "Philadelphia Insurance Company" as the released party instead of "Philadelphia Indemnity Insurance Company."[18]  As a preliminary matter, it appears that the Texas Supreme Court has not ruled on the specific issue whether a release between two parties is effective when the release does not state the legal name of one of the parties with precise accuracy, but instead erroneously names another legal entity that is not a party.  Therefore, according to Fifth Circuit precedent, we must attempt, based on Texas law, to determine what the Texas Supreme Court would decide in this instance.

Here, considered as a whole, the Release demonstrates that the parties intended PIIC to be the released party.  Even though the Release names "Philadelphia Insurance Company" instead of "Philadelphia Indemnity Insurance Company" as the released party —— essentially leaving out the word "Indemnity"—— the Release also lists the policy number that PIIC issued to SSR under its insurance policy.  And, of course, the parties had to know with whom they were dealing.  SSR had no policy with Philadelphia Insurance Company; it had one with PIIC, received payment from PIIC, and could only be releasing PIIC.  Therefore, to avoid making the policy number superfluous, "Philadelphia Insurance Company" should be read to refer to PIIC.  Such a reading harmonizes and gives effect to all the provisions of the contract.  Furthermore, by including the policy number, it is clear that both parties intended the Release to apply to PIIC.  Even though Philadelphia Insurance Company is a separate legal entity, the policy number on the Release is specific to PIIC, and Philadelphia Insurance

---

[18]  To support its position, SSR cites to two Texas Supreme Court cases that deal with releases in the context of multiple tortfeasors.  *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419-20 (Tex. 1984); *McMillen v. Klingensmith,* 467 S.W. 2d 193, 196 (Tex. 1971).  We are persuaded by the district court's reasoning and lengthy analysis establishing that these cases are not applicable to the instant case because they deal with the context of multiple tortfeasors, rather than one party in a contract dispute.

Company was not a party to the insurance policy. Counter to principles of Texas contract law, SSR's reading would essentially read one section of the Release in a vacuum and render the policy number meaningless. The district court correctly held that the Release adequately named PIIC.

## C. Unconscionability

Under Texas common law[19], an unconscionable contract is unenforceable.[20] In deciding whether a contract is unconscionable, a court evaluates (1) the procedural aspect of the agreement, meaning the manner and circumstances in which the contract was made, and (2) the substantive aspect of the agreement, meaning the fairness of the contractual terms themselves.[21]

In determining whether a contract is procedurally or substantively unconscionable, the court may consider the following factors: (1) the entire atmosphere in which the agreement was made, (2) the alternatives, if any, available to the parties at the time the contract was made, (3) the non-bargaining ability of one party, (4) whether the contract is illegal or against public policy, and (5) whether the contract is oppressive or unreasonable.[22] It is also important

---

[19] It should be noted that PIIC and SSR disagree on whether Texas law is applicable to SSR's affirmative defense of unconscionability. SSR urges that unconscionability under the Texas Deceptive Trade Practices Act. ("DTPA") may be applied to an affirmative defense of unconscionability; PIIC contends —— and the district court agreed —— that only common law applies. We are persuaded that, under Texas law, common law applies to the affirmative defense of unconscionability and accordingly apply common law in the instant case. TEX. PRAC., CONTRACT LAW § 3.10 (3d ed. 2009) ("While at common law unconscionability is a defense to contractual performance, the DTPA allows consumers to collect damages for unconscionable conduct by sellers."); TEX. PRAC., CONSUMER RIGHTS AND REMEDIES § 4.8 (3d ed. 2009) ("Unconscionability has traditionally been viewed as a defensive remedy. The Texas Legislature, however, changed this characteristic of the doctrine by including unconscionability as a cause of action under the Texas Deceptive Trade Practices Act.").

[20] *Ski River Dev., Inc. v. McCalla,* 167 S.W.3d 121, 136 (Tex. App. — Waco 2005, pet. denied) (citations omitted).

[21] *Id.*

[22] *Id.*

to consider whether there is a gross disparity in the values exchanged.[23] Additional factors that may contribute to finding an agreement procedurally unconscionable include (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement.[24]

Gross inequality of bargaining power coupled with unreasonably favorable terms to the stronger party may show that the weaker party had no meaningful choice or alternative, or did not in fact assent or appear to assent to the unfair terms.[25] Any procedural or substantive abuse must be "shocking or gross", however, for a court to interfere with a contract on grounds of unconscionability.[26]

SSR advances on appeal that the Release is unconscionable for the following reasons: (1) SSR stockholders are not native speakers of English and were born overseas, (2) the individuals who evaluated SSR's claim on behalf of PIIC had 146 years of combined experience in the insurance industry, (3) PIIC did not advise SSR to retain legal representation, and (4) there was a gross disparity in the values exchanged between the parties in signing the Release.

We are persuaded by the district court's analysis on this point. First, there are a number of undisputed facts that indicate that the shareholders of SSR were not naive businessmen, regardless of the experience level of PIIC's agents. For example, the SSR individual stockholders (1) formed a corporation to acquire and

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *El Paso Natural Gas v. Minco Oil & Gas*, 964 S.W.2d 54, 62 (Tex. App. — Amarillo 1997) (rev'd on other grounds, 8 S.W.3d 309 (Tex.1999)).

No. 11-50282

operate a hotel for $5,725,000, (2) executed a promissory note with Wachovia Bank for $4,580,000 with monthly payments of $27,547.81 for ten years, (3) purchased an insurance policy from PIIC, and (4) hired a management company to assist in the management and operation of the Hotel.

Furthermore, we are not aware of any Texas authority establishing a duty to advise a party to a Release to obtain legal representation. Moreover, even if SSR's stockholders were not fluent in English and did not have legal representation, they were represented by their management company, Aalliant, which signed the Release on SSR's behalf.[27] Given SSR's relative sophistication and the fact that it was represented by a management company, this does not appear to be a case in which SSR was unable reasonably to protect its interests.

Additionally, SSR's claim of gross disparity in value fails. As evidenced by the letters between PIIC and SSR during the investigation and before the parties signed the Release, PIIC asserted that the insurance policy did not cover most of the damage to the Hotel. When we review the undisputed facts known at the time, the value given to SSR in exchange for its signing of the Release was the value to which SSR was entitled under its insurance policy according to PIIC, that is, the value of the repairs to the conference room floor. As SSR has failed to establish unconscionability under either a procedural or substantive theory, the district court was correct in finding that the Release was not unconscionable.

---

[27] SSR does not claim that its agent, Aalliant, was deficient in English.

No. 11-50282

## III.  Attorneys Fees

### A.  Standard of Review

The amount of an award for attorneys fees is reviewed for abuse of discretion.[28]  Findings of the facts underlying an award of attorneys fees are reviewed for clear error; underlying conclusions of law are reviewed *de novo*.[29]

### B.  Analysis

SSR advances multiple theories under which the district court erred in awarding attorneys fees to PIIC.  SSR first contends that the district court's summary judgment and final order barred any subsequent claim for attorneys fees.[30]  More accurately, SSR claims that the attorneys fees sought by PIIC are actually part of the merits of its declaratory judgment action, and thus are not properly recoverable under Federal Rule of Civil Procedure 54(d).[31]

Section 37.009 of the Texas DJA states that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorneys fees as are equitable and just." Federal Rule of Civil Procedure 54(d) sets forth procedures for obtaining post-judgment attorneys fees, "whether or not those fees are denominated as 'costs,' as well as requests for the reimbursement of expenses that are not taxable as costs."[32]  The rule does not, however, apply to attorneys

---

[28] *El Paso Indep. Sch. Dist. v. Richard R,* 591 F.3d 417, 425 n.9 (5th Cir. 2009) (citation omitted).

[29] *Dearmore v. City of Garland,* 519 F.3d 517, 520 (5th Cir. 2008).

[30]  The district court granted PIIC's motion for summary judgment holding that it barred "all of SSR's claims in this lawsuit."  The district court then entered a final judgment, ordering that both SSR and PIIC "take nothing by this suit" and that "all other relief not expressly granted herein is denied."

[31] Federal Rule of Civil Procedure 54(d)(2)(A) states that "a claim for attorneys fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

[32]  10 CHARLES A. WRIGHT, ARTHUR R. MILLER AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2680 (3d ed. 2005).

fees that, under governing law, are recoverable as an element of the damages.[33] Therefore, Rule 54 applies to attorneys fees that are deemed "costs," or, more importantly, that are not an element of damages that a plaintiff would be required to prove as part of its claim.

The attorneys fees that PIIC requested were not an element that PIIC had to prove to prevail on its declaratory judgment action against SSR. First, as further discussed below, the Texas DJA is considered to be procedural, not controlling substantive law. Rather, the substantive law under which PIIC sought relief was Texas contract law. Attorneys fees were not an element of PIIC's claim that the Release barred all of the SSR's later insurance claims for damage to its hotel.[34]

Second, SSR contends that the quantum of the awarded fees is arbitrary and unreasonable because (1) the district court did not grant a hearing so that it could present evidence that the fees were unreasonable, (2) the awarded attorneys fees should not have included amounts incurred prior to the declaratory judgment action or amounts relating to issues other than the Release, and (3) the district court did not properly reduce the award for attorneys fees specifically reducing them for one duplicate entry, but not for others.

In reviewing an award of attorneys fees under the Texas DJA, appellate courts consider whether the awarding court ruled "arbitrarily, unreasonably, or without regard to guiding legal principles" or ruled "without supporting

---

[33] *Id.*; *see Bender v. Freed*, 436 F.3d 747, 749-50 (7th Cir. 2006) (holding that Rule 54(d) applied to an award of attorneys fees because it was not an element of damages to be proved at a trial under the subsection of ERISA's civil enforcement provision permitting the court to award reasonable attorney fees and costs to either party. The relevant statute stated that "the court in its discretion may allow a reasonable attorney's fee and costs of action.")

[34] We find that the instant case is similar to the one at issue in the Seventh Circuit case *Bender v. Freed*, 436 F.3d 747 (7th 2006), which held that the attorneys fees pursuant to a provision of ERISA providing for "a reasonable attorney's fee and costs of action" were costs and not part of the underlying damages.

No. 11-50282

evidence."[35] Specifically, the court must consider whether "there was insufficient evidence" to show that the award was not reasonable and necessary, inequitable or unjust.[36]

Under Federal Rule of Civil Procedure 54(d)(2)(D) "[b]y local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings." The local rules of the Western District of Texas provide that, in seeking attorneys fees "[t]he motion shall be resolved without further hearing, unless an evidentiary hearing is requested, reasons therefor presented, and good cause shown, whereupon hearing on the motion may be granted."[37]

SSR's contention regarding the reasonableness of the amount of attorneys fees is unavailing. First, the district court acted within its discretion in denying a hearing under local rules.[38] Furthermore, we are satisfied that the district court adequately discussed and provided the basis on which it awarded attorneys fees to PIIC. Specifically, the district court noted that it had reviewed more than 200 pages of invoices and detailed time records filed by PIIC and had based its calculation on the "lodestar method" of "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."[39] The district court further noted that it had a duty to "show care and restraint" and that it reduced fees for duplicate entries. Based on the foregoing, we are satisfied that the district court did not abuse its discretion in its award of attorneys fees to PIIC.

---

[35] *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex. 1998).

[36] *Id.*

[37] W.D. Tex. Loc. R. CV-(i)(3).

[38] In its response to PIIC's motion for attorneys fees, SSR merely requested a hearing and did not provide any reasons or good cause to show that a hearing was warranted.

[39] The district court cited to *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999) in support of applying the "lodestar method".

No. 11-50282

Finally, SSR urges us to review the district court's award of attorneys fees in light of our holding in *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th. Cir. 1998) under a plain error standard of review. Concerned that the Texas DJA is procedural law, and thus not controlling in federal court, we here requested and received additional briefing with respect to (1) our holding in *Utica* that "a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law" and (2) the consequences of SSR's failure to raise this argument either in the district court or on appeal. Having now reviewed this issue, we do not believe that plain error exists in these circumstances.

We review for plain error when an argument is not raised in the lower courts[40], or on appeal.[41] In finding plain error, we must consider whether (1) there was error, (2) it was plain, (3) it affects substantial rights, and (4) allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings.**[42]** In light of our holding in *Utica*, the district court's award of attorneys fees pursuant to the Texas DJA was in all likelihood an error that was plain and affected SSR's substantial rights. Nonetheless, in this case, an award of attorneys fees under the Texas DJA does not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." Simply stated, this is not a case in which attorneys fees would be unjustified.[43] It is obvious to this court that both parties knew precisely who was released in settling SSR's

---

[40] *United States v. Gutierrez*, 635 F.3d 148, 152 (5th Cir. 2011).

[41] *United States v. Pineda-Ortuno*, 952 F.2d 98, 105 (5th Cir. 1992).

[42] *Crawford*, 131 F.3d at 1123, 1124 (citing *United States v. Olano,* 507 U.S. 725, 732 (1993)).

[43] *Compare AG Acceptance Corp. v. Veigel,* 564 F.3d 695, 701 (5th Cir. 2009) (reversing attorneys fees awarded based on a misapplication of the Texas DJA and noting the fees were "unjustified".)

insurance claim.  SSR's baseless contention that the Release is ineffective because of what essentially amounts to a typographical error is nothing more than an attempt to circumvent the consequences of its agreement through needlessly prolonging this litigation.  Accordingly, an award of attorneys fees under such circumstances does not threaten the "fairness, integrity or public reputation" of these proceedings.[44]  Finding no plain error, we are satisfied that attorneys fees are appropriate in this case, and we affirm the district court's award.

## IV.  Conclusion

The district court's summary judgment and its award of attorneys fees to PIIC are AFFIRMED.

ENDRECORD

---

[44] In dissenting from the panel majority's refusal to disturb the district court's award of an admittedly substantial amount of attorneys fees, our learned colleague focuses almost exclusively on that amount, seeming to ignore that SSR (1) never raised this issue, either in the district court or before this court and (2) needlessly prolonged this litigation by pursuing a claim on the strength of nothing more than a typographical error.  The dissent classifies this award of attorneys fees as a transfer "from one litigant's funds to the pockets of another," when in fact the award simply replenished funds that PIIC had been forced to expand on fees and costs as result of SSR's dogged pursuit and prolongation of its meritless claim.  Moreover, as our learned colleague is surely aware, this is not the first time that this court has affirmed an award of attorneys fees pursuant to a misapplication of the Texas DJA after the party had failed to raise the issue either in the district court or on appeal.  *In re Trinh*, 210 F.3d 369 (5th Cir. 2000) (Jones, Jolly, Benavides) (unpublished) (affirming the award and refusing to consider the matter, even under a plain error standard of review).  We remain convinced that anyone familiar with SSR's dogged conduct of its baseless claim,  as was the district judge who presided over the lengthy litigation and made the award at issue, would not find the proceedings or the result as unfair or unjust.

No. 11-50282

E. GRADY JOLLY, Circuit Judge, dissenting in part:

Because the majority stamps its approval on the transfer of $280,641.38 from one litigant's funds to the pockets of another without any established legal right to those funds, I respectfully dissent. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[A] party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.").

The majority's imprimatur on this award reflects adversely on the fairness, integrity, and public reputation of judicial proceedings, and is regrettable.