**Brenda T. McNeely CHAVEZ, Appellant,**

v.

**Joe D. McNEELY, Appellee.**

No. 01–08–00202–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 14, 2009.

David M. Gunn, Beck, Redden & Secrest, L.L.P., John C. Pavlas, Houston, TX, for Appellant.

Don R. Riddle, The Riddle Law Firm, Timothy F. Lee, Melissa Michelle Davis, Ware, Jackson, Lee & Chambers, L.L.P., Holli M. Palmer, Law Offices of Holli M. Palmer, Houston, TX, Marcus F. Schwartz, Schwartz & Schwartz, Hallettsville, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

The issues presented by this case are (1) whether a district court has jurisdiction to construe a contract that is incorporated into an agreed, final divorce decree even though the court is not the same court that rendered the divorce judgment and (2) whether the contract incident to divorce in this case is too indefinite to enforce.

## BACKGROUND

### The Relationship

Appellant, Brenda T. McNeely Chavez ("Brenda"), and appellee, Joe D. McNeely[1] ("Joe"), were first married in 1969, and they have three children together. Joe and Brenda had a rocky relationship and were divorced and remarried twice. After their second remarriage in 2000, Joe was involved in a horseback riding accident that left him completely paralyzed.[2]

1. This Court has received notice that appellee, Joe D. McNeely is deceased. Because Mr. McNeely died after the trial court rendered judgment but before the case was finally disposed of on appeal, we will proceed to adjudicate the appeal as if all parties were alive. See TEX. R. APP. P. 7.1(a)(1).

2. As a result of this accident, Joe filed a personal injury action against Brenda's com-

### The Agreed, Final Divorce Decree

In June 2001, Joe and Brenda divorced for a third time. The 311th District Court of Harris County, Texas, entered an "Agreed Final Decree of Divorce" on June 29, 2001. In the divorce decree, Joe and Brenda divided their properties. The divorce decree gave Joe a life estate in a 120–acre ranch in Waller County, with the remainder going to Brenda. Page 12 of the 14–page divorce decree contains the following paragraph:

> Responsibility for Care of Joe D. McNeely: The parties stipulate that Joe D. McNeely's sister, Patsy Brewer and her family will be responsible for the daily physical care of Joe D. McNeely. **Brenda T. McNeely stipulates that she will provide *as much* toward the care and providing for *the needs* of Joe D. McNeely *as possible, limited only by her personal financial situation.*** (Emphasis added).

### The Subsequent Litigation

*Joe brings restricted appeal in Harris County*

Joe then filed a restricted appeal from the divorce decree, which was unsuccessful. *See McNeely v. McNeely*, No. 11–02–00036–CV, 2003 WL 187573 (Tex.App.-Eastland 2003, pet. denied).

*Joe brings and nonsuits contract claim in Harris County*

In July 2003, Joe sued Brenda again in the 311th District Court, which had rendered the June 29, 2001 judgment in their

pany, Chavez Construction. Joe recovered a money judgment, which this Court affirmed. *See Chavez Const., Inc. v. McNeely*, 177 S.W.3d 593, 598 (Tex.App.-Houston [1st Dist.] 2005, pet. granted, judgm't rev'd). While pending at the Texas Supreme Court, the case settled, and Joe recovered $4 million gross or $1.9 million net.

divorce. Joe sought damages based on a breach of the contractual provisions contained in the divorce decree. Four years after filing suit in Harris County, Joe nonsuited his case.

### Joe refiles contract claim in Waller County

The next day—April 10, 2007—Joe refiled his suit in Waller County. Brenda moved to transfer the case to Harris County, but the Waller County court denied her motion. The case was tried to the bench in Waller County. Brenda took the position that (1) the case should be heard in Harris County, and (2) the provision of the divorce decree that served as the basis of Joe's claim was too indefinite to be enforced as a contract. Brenda testified that she continued to pay the mortgage, taxes, and insurance on the ranch where Joe lived. She also testified that she had paid what she could for Joe's care until her business began to fail in 2003. Joe, however, contended that Brenda's personal spending habits did not reflect a decline in her financial ability to contribute toward his care.

### Waller County District Court Renders Judgment for Joe on Contract Claim

The trial court rendered judgment for Joe on his breach of contract claim and awarded him $950,000 in damages, plus interest and attorney's fees. The trial court made the following findings of fact and conclusions of law, which are relevant to the disposition of this appeal.

A contract existed between the Plaintiff and the Defendant, as set forth in the Agreed Final Decree of Divorce (Contract/Decree).

Defendant agreed to be obligated, by virtue of the contract/Decree to provide as much toward the care and providing for the needs of Joe D. McNeely (Plaintiff herein) as possible, limited only by her personal financial situation.

Defendant failed to comply with her contractual obligations contained in the contract/Decree.

Defendant failed to comply with her agreement to provide as much toward the care and providing for the needs of Joe D. McNeely as possible, limited only by her, Brenda McNeely's[,] personal financial situation. Such breach of her agreement mentioned above occurred continuously between April 10, 2003 and the date of trial, December 12, 2007.

The contract between the parties, especially the paragraph headed "Responsibility for Care of Joe D. McNeely" contained on Page 12 of the Agreed Final Decree of Divorce, was not vague but was clear and unambiguous.

Plaintiff Joe D. McNeely's needs have exceeded $500,000 per year since April 10, 2003.

Defendant's personal financial situation since the entry of the Agreed Final Decree of Divorce has been such that she could have provided substantial care and provisions for the needs of Joe D. McNeely, in excess of $300,000 per year for the years 2003 through 2007.

Plaintiff Joe D. McNeely's damages directly resulting from Defendant's breach of the contract/Decree and from Defendant's failure to comply with her obligations set forth in the contract/Decree are $950,000.

## ISSUES ON APPEAL

### Standards of Review

▮ In two issues on appeal, Brenda contends (1) that the trial court in Waller County did not have jurisdiction over the case, and (2) that the contractual support provision in the agreed divorce decree is too indefinite to be enforced. Both issues

on appeal—whether the trial court lacks jurisdiction and whether the contract is sufficiently definite to be enforceable—are legal issues to be reviewed de novo by this Court. *See C.L. Westbrook, Jr. v. Penley,* 231 S.W.3d 389, 394 (Tex.2007) (subject-matter jurisdiction is question of law that is reviewed de novo by appellate court); *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999) (contract construction is question of law subject to de novo review by appellate court).

### Did the Waller County District Court Have Jurisdiction?

In her first issue on appeal, Brenda contends the district court in Waller County lacked subject-matter jurisdiction. Specifically, she claims that chapter 9 of the Texas Family Code provides exclusive jurisdiction in the court that rendered the divorce decree—in this case the 311th District Court of Harris County.

■■■ Article V, section 8 of the Texas Constitution provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8. The legislature has provided that the district court possess "the jurisdiction provided by Article V, Section 8, of the Texas Constitution," and "may hear and determine any cause that is cognizable by courts of law or equity." TEX. GOV'T CODE ANN. § 24.008 (Vernon 2004). "Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 220 (Tex.2002). Because the Waller County District Court

is a court of general jurisdiction, it has jurisdiction unless exclusive jurisdiction has been conferred on the 311th District Court of Harris County.

Brenda argues that sections 9.001 and 9.002 of the Family Code create exclusive jurisdiction over this suit in the 311th District Court of Harris County, the court that rendered the divorce decree. The relevant provision of section 9.001 provides that "[a] party affected by a divorce decree ... may request enforcement of that decree by filing a suit to enforce as provided by this chapter in the court that rendered the decree." TEX FAM. CODE ANN. § 9.001 (Vernon 2006). Section 9.002 provides: "The court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided in Chapter 7." *Id.* at § 9.002.

■■■ We begin by noting that the language of section 9.001—"a party affected by a divorce decree ... *may* request enforcement of that decree ..."—is permissive in nature, not mandatory. Unless the legislature clearly intended otherwise, words used in statutes should be given their ordinary, reasonable meaning. *See Inwood N. Homeowners' Ass'n, Inc. v. Meier,* 625 S.W.2d 742, 743 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ). The ordinary meaning of "shall" or "must" is of a mandatory effect, whereas the ordinary meaning of "may" is merely permissive in nature. *Id.; see also U.S. v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion.").

Secondly, had the Legislature intended that sections 9.001 and 9.002 provide exclusive jurisdiction, it could have done so by using clear statutory language, as it has done in other situations. *See* TEX. FAM. CODE ANN. § 9.101(a) (Vernon 2006) ("[T]he court that rendered a final decree

of divorce ... retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order ...."); Tex. Fam. Code Ann. § 155.002(a) (Vernon 2008) ("[A] court acquires continuing exclusive jurisdiction over the matter provided for by this title in connection with a child on the rendition of a final order.").

■ Finally, we note that Joe's suit is a breach of contract action based upon an agreement incorporated into a final divorce decree. A breach of contract action to recover money damages invokes the general jurisdiction of the district court. *See Adwan v. Adwan*, 538 S.W.2d 192, 194–95 (Tex.Civ.App.-Dallas 1976, no writ) (holding that, although Family Codes grants exclusive jurisdiction over suits affecting parent-child relationship to court rendering judgment, breach of contract suit for damages based on failure to make payments provided for agreed judgment could be brought in district court rather than court that rendered decree). In *Underhill v. Underhill*, 614 S.W.2d 178, 180 (Tex.Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.), the court of appeals held that the court granting a divorce does not have exclusive jurisdiction to hear a suit brought to enforce a property settlement agreement entered into upon divorce. "[O]nce the parties have agreed on a property settlement that contains a provision for periodic support payments, a suit to recover missed payments does not involve matters incident to divorce, but is instead more akin to an independent action on a contract." *Id.*

For these reasons, we conclude that the Waller County District Court had jurisdiction to hear Joe's breach of contract action. Accordingly, we overrule Brenda's first issue on appeal.

### Does the Contract Fail for Indefiniteness?

■ In her second issue on appeal, Brenda contends that the clause requiring her to continue to pay "as much as possible" toward Joe's "needs," limited only by her "personal financial situation," is too indefinite to be enforced. We agree.

■ A contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties's obligations. *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000). "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain." *Id.*

■ A contract is sufficiently definite if a court is able to determine the respective legal obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). Contract terms are reasonably certain "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) of Contracts § 33(2) (1981). If an alleged agreement is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *See id.* Whether an agreement fails for indefiniteness is a question of law for the court. *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex.App.-Dallas 2004, pet. denied); *see also T.O. Stanley Boot Co.*, 847 S.W.2d at 222.

In *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 243 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n.r.e), the bank allegedly agreed to lend Pine whatever amount of money he needed to construct houses on 108 lots. *Id.* The loans were to be made according to "prevailing market rates" and "industry standards." *Id.* This Court held that the agreement was unen-

forceable because, among other things, there was no agreement as to the total amount to be loaned, when and how the interest was to be paid, when the principal was to be paid, or how to determine "prevailing market rate" or "industry standards." *Id.*

In *T.O. Stanley Boot Co.,* the bank allegedly promised to lend the corporation $500,000. The supreme court held that the agreement was too indefinite to be enforced because, although it provided the amount of the loan, many terms, including the interest rate and repayment terms were missing. *T.O. Stanley Boot Co.,* 847 S.W.2d at 222.

In *Playoff Corp. v. Blackwell,* —— S.W.3d —— (Tex.App.-Fort Worth 2008, no pet.), Blackwell sued Playoff for breach of an oral employment contract. Blackwell alleged that Playoff had agreed to employ him and, in exchange, he would not require Playoff to pay $600,000 in consulting fees it owed him. *Id.* at ——. Blackwell also claimed that, if Playoff terminated his employment, he would be entitled to 25% of the "fair market value" of Playoff, after reducing the "fair market value" by $5 million on the last day of his employment. *Id.* The court of appeals held that the agreement was too indefinite to enforce because the evidence showed that the parties had not yet agreed on how to determine the "fair market value" of the business. Thus, the alleged contract was nothing more than an unenforceable agreement to agree. *Id.*

In *Ski River Dev., Inc. v. McCalla,* 167 S.W.3d 121, 129 (Tex.App.-Waco 2005, pet. denied), lessees, the Bakers, sub-leased a two-acre tract of land to the McCallas. The sub-lease provided:

> That, in the event Lessees [Bakers] shall purchase or otherwise obtain legal ownership of *said Property* from Lessor [Glazier] and later *elect to sell,* Lessees [Bakers] hereby grant Sub–Lessees [McCallas] the First Option to Purchase all, or *a portion of said Property* from Lessees [Bakers] at market value.

*Id.* at 133. (Emphasis added). The court of appeals held that the agreement was too indefinite to enforce because it did not, among other things, (1) define "said property" or "portion of said property," (2) state whether "elect to sell" included merely listing the property for sale, (3) state when the market value was to be determined, or (4) provide a method for determining market value. *Id.* at 134.

Brenda argues that this case presents a situation of indefiniteness "cubed" because there are three indefinite terms. First, the clause provides that Brenda will pay "as much as possible," but it does not define that term, nor explain how the parties will reach an agreement as to what that term means. Second, the clause refers to paying for Joe's "needs," but again, it does not specify what those "needs" are. There is no way to determine whether "needs" refers to basic needs such as food, shelter, and clothing, or whether it includes medical or caregiving needs. Finally, the clause concludes that Brenda's obligation is limited by her "personal financial situation," but it does not explain how or when Brenda's "personal financial situation" would be impacted such that it would excuse or reduce any performance required by her.

Nevertheless, Joe argues that "Brenda's performance, and Joe's acceptance of it, provides a measuring stick by which the trial court could determine what the parties understood the provision in the Divorce Agreement to mean." *See* RESTATEMENT (SECOND) OF CONTRACTS § 34(2) cmt. c. (explaining that partial performance may remove uncertainty and give meaning to otherwise indefinite term). However, Brenda's attempt to comply with the indef-

inite term for some time does nothing to clarify the clause in question. There is simply no guidance in the clause to tell Brenda or the court how much she is required to pay each month or how and when her personal financial situation would be such that it would reduce or excuse her performance. *See Mooney v. Ingram*, 547 S.W.2d 314, 319 (Tex.Civ. App.-Dallas 1977, writ ref'd n.r.e.) (acknowledging that, in certain situations, performance can make certain an indefinite contract, but noting that nothing in parties' performance served to clarify disputed term).

Because we hold that the clause relied upon by Joe is too indefinite to be enforced as a contract, we sustain Brenda's second issue on appeal.

## CONCLUSION

We reverse the judgment of the trial court and render judgment that Joe take nothing on his breach of contract claim against Brenda.