

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00289-CV

Kenneth Richard **GRIFFITH**,
Appellant

v.

Martha Hightower **REYES**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 15087
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Beth Watkins, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: August 10, 2022

AFFIRMED

At issue in this appeal is whether a court of general jurisdiction has subject matter jurisdiction over an enforcement action involving a final decree of divorce rendered by another court. Because we conclude it does not have subject matter jurisdiction over such an enforcement action, we affirm the trial court's order dismissing the underlying enforcement action for lack of jurisdiction.

BACKGROUND

In 2009, Appellant Kenneth Richard Griffith and Appellee Martha Hightower Reyes divorced after a contested trial in the Medina County Court at Law. On November 30, 2009, the trial judge in the Medina County Court at Law signed the Final Decree of Divorce. Griffith appealed to this court, and on January 5, 2011, this court issued an opinion affirming the trial court's judgment. *See Griffith v. Griffith*, 341 S.W.3d 43 (Tex. App.—San Antonio 2011, no pet.).

On August 31, 2017, Griffith filed the underlying suit in Gillespie County. According to Griffith's original petition, the Final Decree of Divorce required Reyes "to pay certain debts and to indemnify and hold [Griffith] and his property harmless from any failure to so discharge the debts." Griffith alleged that Reyes had "failed and refused to discharge certain debts and therefore" Reyes was obligated "to indemnify and hold [Griffith] and his property harmless from the failure to discharge said debts." Griffith alleged that he had suffered damages and was entitled to "his reasonable and necessary attorney's fees in connection with bringing and prosecuting this action for indemnification." Griffith also alleged that Reyes had engaged in "a civil conspiracy to wrongfully and willfully violate [his] rights in connection with the divorce proceeding." Reyes filed a general denial to the allegations.

In September 2018, Griffith filed a First Amended Petition, removing his civil conspiracy allegation. On May 13, 2019, Reyes filed an amended answer and added counterclaims for intrusion on seclusion and a violation of section 143.001 of the Texas Civil Practice and Remedies Code, alleging that Griffith had "intercepted, attempted to illegally or improperly intercepted or accessed [Reyes]'s emails, including emails between [Reyes] and her attorney."

A year later, on May 19, 2020, Griffith filed a Second Amended Petition, modifying his allegations to present an enforcement action by pleading that Reyes had violated the Final Decree of Divorce. Griffith requested that Reyes be held in contempt and fined for each violation of the

decree alleged. He further alleged that because of Reyes's "blatant disregard and contempt" for the divorce decree, the trial court should create a constructive trust and appoint a receiver to secure payment from Reyes. Finally, Griffith asked the trial court to "enter a clarifying order more clearly specifying the duties imposed on [Reyes] and giving [Reyes] a reasonable time within which to comply."

On March 29, 2021, Reyes filed a motion to dismiss Griffith's petition for enforcement or, in the alternative, motion to transfer venue, arguing that pursuant to section 9 of the Texas Family Code, only the court that rendered the Final Decree of Divorce had the authority to enforce said decree. On April 23, 2021, the trial court signed an order finding that it lacked jurisdiction and dismissing the cause without prejudice. Griffith appealed.

## DISCUSSION

On appeal, Griffith argues the trial court erred in dismissing the cause for lack of jurisdiction. According to Griffith, "[j]urisdiction over a post-divorce enforcement suit is permissive under the clear and unambiguous language of section 9.001 of the Texas Family Code." He contends he properly invoked the general jurisdiction of the Gillespie County district court and that the trial court erred in finding that the County Court at Law in Medina County had exclusive jurisdiction over his enforcement suit.

"Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties." *Id*. at 445. Whether a court has subject matter jurisdiction is a matter of law that we decide de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

Further, we review a question of statutory construction de novo. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). "In construing a statute, our objective is to determine

and give effect to the Legislature's intent." *Id*. (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). "We begin by examining the plain meaning of the statute's language." *Id*. (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389-90 (Tex. 2014)). "If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids." *Id*. (quoting *Crosstex*, 430 S.W.3d at 389) (internal quotes omitted).

In support of his argument that the Gillespie County district court had general jurisdiction to hear his case, Griffith argues section 9.001 of the Texas Family Code "is unambiguously permissive in nature." Section 9.001, "Enforcement of Decree," provides the following:

> (a) A party affected by a decree of divorce or annulment providing for a division of property as provided by Chapter 7, including a division of property and any contractual provisions under the terms of an agreement incident to divorce or annulment under Section 7.006 that was approved by the court, may request enforcement of that decree by filing a suit to enforce as provided by this chapter in the court that rendered the decree.
>
> (b) Except as otherwise provided in this chapter, a suit to enforce shall be governed by the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit.
>
> (c) A party whose rights, duties, powers, or liabilities may be affected by the suit to enforce is entitled to receive notice by citation and shall be commanded to appear by filing a written answer. Thereafter, the proceedings shall be as in civil cases generally.

TEX. FAM. CODE § 9.001. Section 9.002, "Continuing Authority to Enforce Decree," provides that the "court that rendered the decree of divorce or annulment *retains the power to enforce the property division* as provided by Chapter 7, including a property division and any contractual provisions under the terms of an agreement incident to divorce or annulment under Section 7.006 that was approved by the court." *Id*. § 9.002 (emphasis added). Section 9.003 gives filing deadlines for filing such an enforcement action. Further, section 9.006, "Enforcement of Division of Property," provides that the court "may render further orders to enforce the division of property

made or approved in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order." *Id*. § 9.006(a). The court may also "specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." *Id*. § 9.006(b).

Griffith argues section 9.001(a)'s use of "may" means that the court rendering the divorce decree does not have exclusive jurisdiction over an enforcement action. In support of his interpretation, Griffith cites *Chavez v. McNeefy*, 287 S.W.3d 840, 844-45 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Dailey v. McAfee*, No. 01-18-01060-CV, 2020 WL 4758429 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.); *Ishee v. Ishee*, No. 09-15-00197-CV, 2017 WL 2293150 (Tex. App.—Beaumont May 25, 2017, no pet.); *Huey-You v. Kimp*, No. 02-16-00172-CV, 2018 WL 359633, at *1 (Tex. App.—Fort Worth Jan. 11, 2018, pet. denied); and *Rubio v. Rubio*, No. 13-17-00682-CV, 2020 WL 4035515 (Tex. App.—Corpus Christi-Edinburg July 16, 2020, no pet.). However, all these cases are factually distinguishable; none of these cases involve an enforcement action like the one brought in this case.

In *Chavez*, 287 S.W.3d at 842, the parties entered into an "Agreed Final Decree of Divorce" in the 311th District Court of Harris County, Texas. Years later, the husband filed a *breach of contract action* based on the divorce decree in district court in Waller County, Texas. *Id*. at 843. The wife argued on appeal that the Waller County district court did not have jurisdiction to hear the case. *Id*. In considering the issue, the First Court of Appeals first noted that Article V, section 8 of the Texas Constitution provides that "a district court's jurisdiction 'consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *Id*. at 844 (quoting TEX. CONST. art. V, § 8). The First Court of Appeals then explained that the "legislature has provided that the district court

possess 'the jurisdiction provided by Article V, section 8, of the Texas Constitution,' and 'may hear and determine any cause that is cognizable by courts of law or equity.'" *Id*. (quoting TEX. GOV'T CODE § 24.008). "Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Id*. (quoting *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002)). Accordingly, the First Court of Appeals concluded that because the Waller County district court "is a court of general jurisdiction, it has jurisdiction unless exclusive jurisdiction has been conferred on the 311th District Court of Harris County." *Id*.

In reviewing sections 9.001 and 9.002 of the Family Code, the First Court of Appeals focused on the word "may" in section 9.001(a), stating that "*may* request enforcement of that decree" "is permissive in nature, not mandatory." *Chavez*, 287 S.W.3d at 844 (emphasis in original). The court also emphasized that "had the Legislature intended that sections 9.001 and 9.002 provide exclusive jurisdiction, it could have done so by using clear statutory language." *Id*. Finally, the First Court of Appeals noted that the husband's suit was one for breach of contract based upon an agreement incorporated into a final decree of divorce. *Id*. at 845. The court explained that a "breach of contract action to recover money damages invokes the general jurisdiction of the district court." *Id*. The court reasoned that once the parties have agreed on a property settlement as contained in a decree, a breach of contract action brought later "does not involve matters incident to divorce, but is instead more akin to an independent action on a contract." *Id*. (quoting *Underhill v. Underhill*, 614 S.W.2d 178, 180 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)).

Though the First Court of Appeals in *Chavez* did not appear to limit its reasoning to breach of contract actions relating to a divorce decree, the court later clarified its reasoning in *Dailey*, 2020 WL 4758429, at *1. As in *Chavez*, the parties in *Dailey*, entered into an agreed divorce decree in the 257th District Court of Harris County, Texas. *Dailey*, 2020 WL 4758429, at *1. After both

the parties died, a probate court in Harris County was called upon to interpret the settlement agreement as contained in the divorce decree. *Id*. at *2. The First Court of Appeals had to decide "whether the district court that rendered the divorce decree has exclusive jurisdiction over post-divorce actions pursuant to [chapter] 9 of the Family Code, thereby depriving the probate court of subject matter jurisdiction." *Id*. at *6.

In discussing *Chavez*, the First Court of Appeals stressed that *Chavez* was decided in the context of contractual rights created in an agreed divorce decree:

> In *Chavez*, this Court held that a district court in another county, which was not the court that rendered the decree, possessed jurisdiction over a post-divorce action to construe and enforce *a party's contract rights to property as set forth in the terms of the divorce decree*. We further held that Family Code section 9.001(a) is permissive in nature, that the language of sections 9.001 and 9.002 does not indicate that the Legislature intended to make the district court rendering the divorce decree a court of exclusive jurisdiction *over post-divorce actions to enforce contract rights acquired under the decree, and that breach of contract actions that rely on the decree* invoke a district court's powers of general jurisdiction to decide a dispute.

*Dailey*, 2020 WL 4758429, at *6 (emphasis added) (citations omitted). The First Court of Appeals thus clarified that its previous holding was specific to post-divorce actions to enforce *contract rights acquired under the decree. See id*.

Similarly, in *Ishee*, the claims brought by one former spouse against another concerned "contract rights awarded to the [former spouse] in the decree." *Ishee*, 2017 WL 2293150, at *4. Relying on *Chavez*, the Beaumont Court of Appeals concluded that "[b]ecause [the former spouse]'s claims concern contract rights awarded to her in the decree," the trial court had jurisdiction over her claims "even though her claims, in part, [were] based on the terms of the divorce." *Id*. Likewise, in *Rubio*, 2020 WL 4035515, at *1, the parties agreed to the terms of the divorce. One former spouse later filed a suit to quiet title and for declaratory judgment in a court other than the one that had signed the divorce decree. *Id*. at *2. Citing *Chavez*, the Thirteenth Court

of Appeals held that "a court of general jurisdiction, like the court in this case, may enforce a party's rights to property that were acquired based on the terms of a decree." *Rubio*, 2020 WL 4035515, at *5.

In the last case cited by Griffith, *Huey-You*, 2018 WL 359633, at *1, the Fort Worth Court of Appeals does not specify whether the parties agreed to the final divorce decree or whether they had a contested trial; the opinion merely states the divorce decree "confirmed an undivided 1/2 interest" in the residence "as the separate property of each party." One of the former spouses later filed a suit to partition real property, the residence, in a court other than the one that had signed the divorce decree. *Id*. Thus, the former spouse was not seeking enforcement of the divorce decree but was seeking to partition the residence based on rights acquired under the divorce decree. *See id*. Accordingly, none of the cases cited by Griffith involve an enforcement action like the one presented here.

We believe the fact that Griffith has brought an action to enforce the divorce decree is decisive to the jurisdictional analysis. "Under the Family Code, the court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). Such continuing authority to enforce the decree is explicitly granted by section 9.002: "[t]he court that rendered the decree of divorce or annulment retains the power to enforce the property division as provided by Chapter 7 . . . ." TEX. FAM. CODE § 9.002. Further, section 9.001(a) provides that "[a] party affected by a decree of divorce . . . may request enforcement of that decree by filing a suit to enforce as provided by this chapter *in the court that rendered the decree*." TEX. FAM. CODE § 9.001(a) (emphasis added).

Griffith (like the opinions cited above) emphasizes section 9.001(a)'s use of "may," arguing it shows the Legislature intended jurisdiction over enforcement actions to not be exclusive. According to Griffith, had the Legislature intended jurisdiction to be exclusive to the court that

rendered the final decree of divorce, the Legislature would have used "shall" and not "may." Reyes contends Griffith's interpretation does not follow the plain meaning of the text because the Legislature using "shall" in the context of section 9.001(a) would make no sense: "a party affected by a decree of divorce . . . *shall request enforcement of that decree* by filing a suit to enforce as provided by this chapter in the court that rendered the decree." As noted by Reyes, "it would make no sense to say that a party 'shall' request enforcement of a divorce decree in the court that issued the divorce because no party is *required* to seek enforcement." "Rather, the statute simply establishes an enforcement claim, but provides that the action is for the issuing court to address."

We agree with Reyes's interpretation of chapter 9 of the Family Code. Chapter 9 of the Family Code is titled "Post-Decree Proceedings." Subchapter A, in turn, is titled "Suit to Enforce Decree." In looking at the plain language of chapter 9, it is clear the Legislature intended to establish an enforcement action relating to a final decree of divorce and then provided for a procedural mechanism in which to file such a claim. Thus, we conclude there is a distinction between enforcement claims brought under chapter 9 (like the one at issue in this case) and claims brought under other legal authority (like a breach of contract claim). Accordingly, in legal actions for breach of contract claims, or other claims to enforce a party's rights to property that were acquired based on the terms of a decree (like a suit to partition or a suit to quiet title), we agree with our sister courts that a court of general jurisdiction has jurisdiction to decide such claims. *See Dailey*, 2020 WL 4758429, at *6; *Ishee*, 2017 WL 2293150, at * 4; *Rubio*, 2020 WL 4035515, at *5. Such legal actions are not established in chapter 9 of the Family Code; nor does chapter 9 prevent a court of general jurisdiction from hearing such claims. However, in an enforcement action brought under chapter 9 (like the one brought by Griffith), where a party has requested the trial court to sign an order clarifying the divorce decree, it would be an absurd result to hold any

court of general jurisdiction has the authority "to clarify" a final decree of divorce entered by another court.

## CONCLUSION

Because Griffith brought an action to enforce the final decree of divorce and clarify its terms, we conclude the trial court lacked subject matter jurisdiction over his claims. We therefore affirm the trial court's order dismissing the action for lack of jurisdiction.

Liza A. Rodriguez, Justice